JOHN HOURIGAN, administrator, *vs.* JOHN A. NOWELL.

In an action, under the St. of 1869, *c.* 152, to recover for injuries caused by the explosion of illuminating oil, which had been sold by the defendant, and did not conform to the standard fixed by the statute, it is no defence either that the defendant was ignorant that it did not so conform, or that an authorized inspector had certified that it did; and if the person injured was using such care as would have been proper had the oil conformed to that standard, the jury will be warranted in finding that she was in the exercise of due care.

TORT under the St. of 1869, *c.* 152,* by the administrator of the estate of Mary Hourigan, to recover for injuries sustained by her from the explosion, on July 6, 1871, of kerosene oil, which

---

* SECTION 1 of this statute provides for the appointment of inspectors, and that any inspector guilty of fraud, deceit, or culpable negligence shall be punished by fine or imprisonment, or both.

"SECTION 2. No person shall mix for sale naphtha and illuminating oils, or shall sell or offer for sale such mixture, or shall sell or offer for sale, except for purposes of remanufacture, illuminating oils made from coal or petroleum, which will evaporate a gas under one hundred degrees Fahrenheit, or ignite at a temperature of less than one hundred and ten degrees Fahrenheit, to be ascertained by the application of Tagliabue's or some other approved instrument; and any person so doing shall for each offence be punished by fine or imprisonment, as provided in the first section hereof; and shall also be liable therefor to any person suffering damage from the explosion or ignition of such oil thus unlawfully sold or kept, or offered for sale; and such oil thus unlawfully sold or kept, or offered for sale, and the casks or packages containing the same, shall be forfeited and sold; one half of the proceeds of such sale to go to the Commonwealth and the other half to the informer.

"SECTION 3. For all the purposes of this act, all illuminating oils made from coal or petroleum having an igniting point of less than one hundred and ten degrees Fahrenheit, to be determined in the manner provided in the second section of this act, shall be deemed to be mixed with naphtha, and shall be branded unsafe for illuminating purposes."

SECTION 7 provides that upon complaint by an inspector, selectman, or one of several other specified officers, a search warrant may be issued for the search of any premises where illuminating oils are kept for sale contrary to the provisions of the statute.

The St. of 1869, *c.* 345, provides that "no person shall sell or keep for sale at retail, for illuminating purposes, any kerosene, refined petroleum, or any product of petroleum, without having the same inspected and approved by an authorized inspector."

had been sold by the defendant to Albert R. White, and was below the standard fixed by the statute.

At the trial in this court, before *Wells*, J., it appeared that the plaintiff's intestate, while in the employ of White, was injured in the manner and at the time alleged in the declaration; that on February 17, 1871, White purchased of the defendant a barrel of kerosene oil for his own use, which he was using at the time of the accident; and that two days after the accident some oil taken from the barrel was tested by an authorized inspector, and found to be below the standard fixed by the statute. There was some other testimony of a like character, as to the inferior quality of the oil.

The defendant offered evidence tending to show that the oil which he sold to White was part of ten barrels purchased by him of one Merrill, and of a larger number purchased by Merrill of Spear, Gregory & Company; that at the time of the sale by Spear, Gregory & Company to Merrill, all of the barrels so sold were inspected by a regularly authorized inspector and found to be of the required standard; that certificates thereof made by the inspector, accompanied the bills of sale of the oil to Merrill; that Merrill sold the ten barrels to the defendant under an agreement for oil of the legal standard or quality; that the defendant was ignorant of the inferior quality of the oil, if it was in fact inferior; and that he exercised reasonable care and diligence, and was guilty of no negligence in respect thereto.

The defendant asked the judge to instruct the jury as follows: "To sustain his action the plaintiff must prove that the injury was received in consequence of the negligence or fault of the defendant; that at the time of the accident the plaintiff's intestate was in the exercise of due care; that a want of due care on her part, or of those by whom she was employed, in no wise contributed to the accident and the consequent injury; that if the oil was such as the defendant could not lawfully sell, he must have had knowledge of that fact at the time of sale; that if at the time the oil was sold by the defendant to White, it had been tested by an authorized inspector, and said inspector had certified that it was of the quality required by law for illuminating purposes, and

the defendant had reasonable cause to believe it had been so tested, and was of that quality, he had no further duty to perform under the statute, would be guilty of no negligence, and would not be liable in this action, notwithstanding on a day, some five months after the sale and delivery, some oil taken from the barrel originally purchased by White of the defendant was found to be below the standard fixed by law, and some person was injured by the explosion ; that if at the time of the sale White, the defendant, or the person of whom he had the oil, had the certificate of an authorized inspector that the oil was of the quality prescribed by statute for illuminating purposes, the defendant had a right to rely on that certificate for his protection from any liability for damages to any person injured by the subsequent explosion of the oil, although in point of fact the quality of the oil, at the time of the sale and delivery by the defendant, was not what the statute requires for illuminating purposes ; that the defendant's ignorance of the quality of the oil sold to White must have been a wilful ignorance ; and that if he used reasonable diligence and exercised due care to ascertain the quality of the oil he sold he would not be liable."

But the judge refused so to instruct the jury, and instructed them " that misconduct, gross carelessness, or other fault of the plaintiff's intestate which would have been likely to produce the same results, if the oil had been of proper quality, would prevent recovery; that the plaintiff must satisfy the jury that the accident did not arise from any such fault on the part of his intestate ; and that the burden was on the plaintiff to satisfy the jury that the oil used at the time of the injury was a portion of that purchased of the defendant, and was at the time of said purchase below the standard fixed by the statute."

The jury returned a verdict for the plaintiff for $2150, and the defendant alleged exceptions.

*S. R. Townsend*, for the defendant.

*G. Marston & H. J. Fuller*, for the plaintiff.

AMES, J. For the purpose of protecting the community against the dangers incident to the use of explosive illuminating oils, it is provided by the St. of 1869, *c.* 152, §§ 2, 7, that any person who

shall sell illuminating oil mixed with naphtha, or any illuminating oil, made from coal or petroleum, of a quality below the prescribed standard, shall be punished by fine and imprisonment, and shall also be liable in damages to any person injured by the explosion or ignition of any such oil thus unlawfully sold. He is furthermore liable to the forfeiture of all such oil thus unlawfully kept for sale ; and upon complaint by an inspector, selectman or other proper officer, a search warrant may be issued against him, and his premises may be searched for the discovery and removal of all such articles kept for sale in violation of the statute. The third section provides also that all illuminating oils made from coal or petroleum, and having certain characteristics distinctly pointed out in the statute, shall be deemed to be mixed with naphtha, and unsafe for illuminating purposes. The meaning of the statute is that certain descriptions of oils, particularly specified in its terms, shall not be sold at all, except for the purpose of re-manufacture. It would be of no avail to the vendor to offer the excuse that he did not know that the oil in question was dangerous, or that he had relied upon any information or certificate from any other person, even though skilful and experienced in such matters. It is not at all a question of diligence or good faith. The law proceeds upon the assumption that the ordinary purchaser at retail, or for domestic use, is not in a position to know whether the oil that he buys is such as the statute allows to be sold. It therefore provides expressly that all such oils, having certain qualities, are dangerous and unfit for ordinary use, and are not to be sold at all. For the protection of the community, the law throws upon the vendor the responsibility and burden of keeping himself, at his peril, within the terms of the statute, in dealing with a kind of article the use of which has been found to be attended with great danger. See *Wellington* v. *Downer Kerosene Oil Company*, 104 Mass. 64, and cases there cited. See also *Commonwealth* v. *Raymond*, 97 Mass. 567 ; *Commonwealth* v. *Farren*, 9 Allen, 489 ; *Commonwealth* v. *Nichols*, 10 Allen, 199 ; *Commonwealth* v. *Waite*, 11 Allen, 268 ; in all of which, although cases arising under criminal statutes, the *scienter* was held to be immaterial.

The rulings of the court furnish the defendant no ground of complaint. The plaintiff was required to prove that the oil was a portion of that purchased of the defendant, and that it did not conform to the standard prescribed by the statute. The intestate had a right to suppose that the oil was of the legal standard, and if she used that degree of care which would have been necessary and proper, if the oil had been of the proper quality, the jury might find that at the time of the injury she was in the exercise of due care. *Exceptions overruled.*