ARTHUR P. KILLAM, administrator, *vs.* STANDARD OIL
COMPANY OF NEW YORK.

Suffolk.     January 16, 1924. — April 18, 1924.

Present: RUGG, C.J., DeCOURCY, PIERCE, CARROLL, & WAIT, JJ.

*Naphtha. Negligence,* In sale of mixture of kerosene and naphtha. *Witness,* Cross-examination. *Practice, Civil,* Exceptions.

At the trial of an action by an administrator against a corporation selling
kerosene oil for the causing of the conscious suffering and death of the
plaintiff's intestate through an explosion of a lamp which had been
filled with oil purchased from the defendant, it appeared that the defendant sold to the plaintiff's intestate what was supposed to be kerosene oil; that what was sold had a naphtha content of from six and nine
tenths to five and three tenths per cent, and evaporated a gas under one
hundred degrees Fahrenheit. There was a verdict for the plaintiff.
*Held,* that instructions by the judge to the jury, relating to R. L. c.
102, §§ 106–108, that a mixture means a commingling in which the
ingredients retain their independent properties, or separate chemical
nature; that the substance sold was a mixture, if the different ingredients retained their essential properties after they were mixed;
and that, if the jury found there was naphtha in the kerosene sold to
the plaintiff's intestate by the defendant, existing as a distinct and independent thing, they could find the sale of a mixture prohibited by
the statute, were correct.
R. L. c. 102, §§ 106–108, was passed for the protection of the public, and a
vendor of illuminating oil containing naphtha sells it at his peril.
In the action above described, it was not material whether the naphtha
was artificially mixed with the substance sold: if it was allowed to remain in the kerosene oil and was not removed by the process of refining,
and was found in the oil which was sold to the plaintiff's intestate,
a portion of which exploded in the lamp, the statute was violated.
Testimony in cross-examination by an expert called by the plaintiff at
the trial of the action above described, that it appeared that there
is no fluid which will not evaporate a gas under one hundred degrees
Fahrenheit, was immaterial, in view of the fact that R. L. c. 102, § 106,
especially prohibited the sale of a mixture containing naphtha " which
will evaporate a gas under one hundred degrees Fahrenheit," and that
it appeared at the trial that the substance sold to the plaintiff's intestate was sold in violation of that provision of the statute.
It not appearing at the trial above described that the plaintiff relied upon
R. L. c. 102, § 107, and it appearing that the provision of § 106 prohibiting the mixing for sale of naphtha " which will evaporate a gas
under one hundred degrees Fahrenheit " was violated, the reference in

§ 107 to ignition at a temperature less than one hundred ten degrees Fahrenheit was not material, and a statutory violation warranting a finding of negligence on the part of the defendant was made out.

A sale of naphtha under an assumed name in violation of R. L. c. 102, § 108, having been shown, on the evidence at the trial above described, the fact that the amount of naphtha content in the mixture was relatively small was not material.

On the evidence at the trial of the action above described, a finding was warranted that kerosene oil with a naphtha content of six and four tenths per cent was unsafe to use as illuminating oil in an ordinary glass lamp, and it was *held*, that, irrespective of the statutory provisions above referred to, the plaintiff had a right to have the jury pass on the question of the defendant's negligence.

At the trial of the action above described, an expert called by the plaintiff testified in cross-examination that " the way he . . . reads the statute it calls naphtha anything that has a flash point below one hundred degrees Fahrenheit; that the statutory test as he understands it of kerosene is that defined by flash point and fire point." He then was asked, " And by those tests did you find anything that indicated that any of those samples were not within the prescription of the statute? " and answered, " No, I did not." The answer was excluded subject to an exception by the defendant. The witness was cross-examined at length as to the method of testing, the instruments used, and the results obtained, and all the details were gone into. *Held*, that the exception to the exclusion of the answer must be overruled since the question called upon the witness to interpret the statute; and also because the defendant was not harmed by the exclusion.

Tort for the causing of conscious suffering and the death of the plaintiff's intestate, Mary E. Killam. Writ dated May 8, 1924.

In the Superior Court, the action was tried before *Raymond*, J. Material evidence is described in the opinion. The defendant asked and the trial judge gave the following instructions to the jury:

" 1. That the fact, if it be a fact, that there was an explosion of the lamp on the premises of the plaintiff's intestate is not of itself evidence of negligence of the defendant sufficient to warrant a finding for the plaintiff."

" 5. If the jury should find that the oil sold by the defendant to the plaintiff's intestate was of a quality fully up to the requirements of R. L. c. 102, then there is no evidence of negligence on the part of the defendant and the jury must find for the defendant.

" 6. The plaintiff cannot recover in this case without

proving that the defendant was negligent, and if the kerosene delivered by the defendant to the premises of the plaintiff's intestate complied with the requirements of R. L. c. 102, §§ 106, 107, according to tests made as directed in the said statute, then there is no evidence of negligence of the defendant."

" 13. Upon all the evidence the jury must find that each and every one of the samples of kerosene said to have been taken from the premises of the plaintiff's intestate did not ignite at a temperature at less than one hundred ten degrees Fahrenheit."

" 15. There is no evidence that any one of the samples of oil said to have been taken from the premises of the plaintiff's intestate had an ignition point of less than one hundred ten degrees Fahrenheit."

The defendant asked for, and the trial judge refused to give, the following rulings:

" 2. That upon all the evidence there is nothing from which it can be inferred that the injury to the plaintiff's intestate resulted directly from any failure of duty on the part of the defendant and, therefore, the verdict must be for the defendant.

" 3. That the proximate cause of the accident is left to conjecture and may as reasonably be attributed to conditions for which no liability attaches to the defendant, as to one for which it is responsible and, therefore, the plaintiff has not sustained the burden of proof that the defendant was negligent.

" 4. Upon all the evidence it must be found that the oil delivered by the defendant to the premises of the plaintiff's intestate was fully up to and above the standard required by the statutes, R. L. c. 102, and complied in every respect with the statutory requirements regulating the sale of oil and, therefore, the evidence will not warrant a finding that the defendant was negligent."

" 7. R. L. c. 102, § 106, prescribes the quality of illuminating oils which may be lawfully sold and provides certain tests for ascertaining the flash point and the igniting point; and illuminating oil of a quality above the requirements of

this statute may be lawfully sold, and it is immaterial and irrelevant if by other tests not recognized by the statute, naphtha or gasolene may be distilled, refined or extracted from the illuminating oils lawfully sold in accordance with the statute.

" 8. There is no evidence of a violation of R. L. c. 102, § 108.

" 9. There is no evidence upon which the jury is justified in finding any mixture of naphtha or gasolene with the kerosene which the jury may find to have been sold as kerosene by the defendant.

" 10. There is no evidence upon which it can be presumed that any kerosene found by the jury to have been sold by the defendant contained a mixture of kerosene and naphtha or kerosene and gasolene or any evidence upon which the kerosene which the jury may find was sold by the defendant could be deemed to be mixed with naphtha as provided in R. L. c. 102, § 107.

" 11. There is no evidence from which any negligence on the part of the defendant can be inferred.

" 12. Upon all the evidence the jury must find that the analysis of samples of kerosene said to have been taken from cans found upon the premises of the plaintiff's intestate showed that each of the said samples had a flash point above one hundred degrees Fahrenheit."

" 14. Upon all the evidence the jury must find that no one of the aforesaid samples evaporated a gas which would flash under one hundred degrees Fahrenheit."

Other material instructions to the jury and exceptions by the defendant are described in the opinion. There was a verdict for the plaintiff in the sum of $2,500 on a count in the declaration seeking recovery for conscious suffering of the plaintiff's intestate, and for $6,000 on a count for the causing of the intestate's death. The defendant alleged exceptions.

*H. Parker,* (*E. B. Horn* with him,) for the defendant.

*T. Allen, Jr.,* for the plaintiff.

CARROLL, J. This action of tort is brought by the administrator and husband of Mary E. Killam, to recover for

her conscious suffering and death, caused by burns result-
ing from the explosion or ignition of the contents of a kero-
sene lamp at her home, on Monday night, October 28, 1918.

There was evidence to the effect that the defendant sold
and delivered to Mrs. Killam on October 1 and October 15,
1918, cans supposed to contain kerosene oil; that a small
glass lamp was partly filled with oil from one of these cans,
on the Saturday previous to the accident; that a few moments
before the accident the intestate was seen at the door of her
tenement with a lighted lamp in her hand; that a short time
later she was seen walking in one of the rooms, holding a
lighted lamp; that the noise of an explosion was heard, and
" smoke filled up the place; " that when assistance came, the
body of Mrs. Killam was found on the floor; that the cloth-
ing and a portion of the carpet were burned, a part of her
body was burned, and the remains of the glass lamp were
found near her right elbow.   There was evidence that she
consciously suffered and that the fire came from the kerosene
lamp.

Samples of the oil were examined and it was found that
one sample had a naphtha content of six and nine tenths per
cent and its initial boiling point was two hundred and eight
degrees Fahrenheit.   One sample had a naphtha content of
six and four tenths per cent, and the naphtha content in each
of the other samples was five and three tenths per cent and
five and five tenths per cent respectively.   Each of the
samples evaporated a gas under one hundred degrees Fahren-
heit.   The defendant moved for a directed verdict, which
was denied.

R. L. c. 102, § 106, so far as material, provided that,
" Whoever mixes for sale naphtha and illuminating oils . . .
or sells or offers for sale such mixture, or sells or offers for
sale, except for remanufacture, illuminating or fuel oils made
from coal or petroleum, which will evaporate a gas under one
hundred degrees Fahrenheit, or ignite at a temperature of
less than one hundred and ten degrees Fahrenheit, to be
ascertained by the application of Tagliabue's or some other
approved instrument," shall be punished and be liable for
damages caused by the explosion. or ignition of such oil.

Under § 107 of this statute, illuminating oils made from coal or petroleum and having an ignition point of less than one hundred and ten degrees Fahrenheit, determined in the manner provided in the preceding section, are to be deemed to be mixed with naphtha. Under § 108, whoever sells, keeps or offers for sale naphtha under an assumed name, shall be liable to the penalties mentioned in § 106.

The jury could have found that the kerosene oil taken from the can which was used in filling the lamp, contained six and nine tenths per cent of naphtha, existing as a distinct, independent product, retaining its nature and characteristics; that the substance sold was a mixture of kerosene oil and naphtha. The defendant, however, contends that the naphtha found in the kerosene was not mixed with it within the meaning of the statute; that there was no evidence that the naphtha shown by the distillation process was not an original part of the crude petroleum, and remained after the process of refining by which kerosene had been produced; that there was no mixture of kerosene with naphtha in violation of the statute; and that the mixture contemplated by the statute is an artificial mixture. On this question the trial judge instructed the jury in substance that a mixture means the commingling in which the ingredients retain their independent properties, or separate chemical nature; that the substance sold was a mixture, if the different ingredients retained their essential properties after they were mixed; that if the jury found there was naphtha in the kerosene sold to the plaintiff's intestate by the defendant, existing as a distinct and independent thing, they could find the sale of a mixture prohibited by the statute. The instructions were right and the defendant's requests bearing on this aspect of the case were refused properly. The statute was passed for the protection of the public. The vendor of illuminating oil containing naphtha, sells it at his peril. It is not material whether it was artificially mixed with the substance sold; if the naphtha was allowed to remain in the kerosene oil and was not removed by the process of refining, and was found in the oil as testi-

fied to, the statute was violated.    See *Hourigan* v. *Nowell*, 110 Mass. 470; *Gately* v. *Taylor*, 211 Mass. 60, 64.

The statute further prohibits the sale of illuminating oil made from coal or petroleum, which evaporates a gas under one hundred degrees Fahrenheit.    The evidence tended to show that the oil sold to Mrs. Killam was made from petroleum and evaporated a gas under one hundred degrees Fahrenheit.    On cross-examination the plaintiff's expert testified that it appeared that there is no fluid which will not evaporate a gas under one hundred degrees Fahrenheit.    Notwithstanding this evidence, the statute relating to the sale of illuminating oil, in express terms prohibits its sale when made from coal or petroleum, if it evaporates a gas under one hundred degrees Fahrenheit; even if the gas is not inflammable under one hundred degrees Fahrenheit, the statute prohibits the sale of illuminating oil of this character.    It must be construed to mean what it says, namely, prohibiting the sale of such oil if it evaporates a gas under one hundred degrees Fahrenheit, if this fact is ascertained by the Tagliabue or some other approved instrument.    The evidence shows that this fact was determined by using an approved instrument.

The statute also provides that if the oil ignites at a temperature of less than one hundred and ten degrees Fahrenheit, to be ascertained in the manner indicated, its sale is prohibited.    There was no evidence that the oil would ignite at a temperature of less than one hundred and ten degrees Fahrenheit and the plaintiff did not contend that this part of the section was violated, nor that § 107 of the statute was infringed.    The sale of illuminating oil of the kind mentioned, which will evaporate a gas at a less temperature than one hundred degrees Fahrenheit is forbidden.    The reference to the ignition of the gas at a temperature of less than one hundred and ten degrees, to be determined in the manner specified, relates to another and different offence; and, it being shown that the gas was given off at a temperature less than one hundred degrees, the offence was made out, even if no ignition point was shown at that temperature, or at a

temperature of less than one hundred and ten degrees.   The instructions given the jury on this point were in accordance with the statute and were correct.

By § 108, the sale of naphtha under an assumed name was prohibited.   There was evidence that the oil was sold under the name of kerosene; that naphtha was contained in it and remained as naphtha, its nature and characteristics were not changed, and it did not become chemically a distinct product. The fact that the amount of naphtha contained in the mixture was relatively small is not material.   On the evidence the jury could have found that naphtha was sold under the name of kerosene, contrary to the statute.   In addition to this, there was evidence that kerosene oil with a naphtha content of six and four tenths per cent was unsafe to use as an illuminating oil in an ordinary glass lamp.   Irrespective of the statute, the plaintiff had the right to have the jury pass on the question of the defendant's negligence.   *Gately* v. *Taylor,* 211 Mass. 60.   *Thornhill* v. *Carpenter-Morton Co.* 220 Mass. 593, and cases cited.   We find no error in the instructions given to the jury: they were fully and accurately instructed concerning the burden of proof; they were told that upon all the evidence they must find that none of the samples of oil taken from the plaintiff's premises would ignite at less than one hundred and ten degrees Fahrenheit. The case was not one of mere conjecture: there was substantial evidence to establish the plaintiff's contentions.

The defendant excepted to the exclusion of the answer of one of the experts in cross-examination to the question, " And by those tests did you find anything that indicated that any of those samples were not within the prescription of the statute? " the answer being, " No, I did not."   The witness had previously testified that " the way he . . . reads the statute it calls naphtha anything that has a flash point below one hundred degrees Fahrenheit; that the statutory test as he understands it of kerosene is that defined by flash point and fire point."   The question excluded called upon the witness to interpret the statute, and for this reason the answer was excluded properly; but aside from this, the defendant cross-examined the witness at length as to the

method of testing, the instruments used, the results obtained.  All the details were gone into.  We do not think the defendant was harmed by the exclusion of this testimony.

We discover no error in the conduct of the trial.

*Exceptions overruled.*