## J. R. TALLEY v. BEEVER & HINDES.

Decided December 9, 1903.

**1.—Negligence—Charge—Issues Waived.**

In an action for damages for personal injuries, other issues than negligence were set up in the petition, such as misrepresentation and warranty of the safety of the machine for use, but the court submitted only the issue ·of negligence, and the plaintiff did not request other submission. Under such conditions the defendant's liability through negligence is the only question to be considered. The evidence failing to establish negligence on the part of defendant the errors assigned are immaterial.

**2.—Same—Care—Dangerous Articles of Trade.**

One who deals with a thing that is inherently very dangerous, involving both death and bodily harm to some person as the natural and almost inevitable consequence of lack of care, owes to the public at large the duty of extreme caution. A gasoline "pear burner" is not a thing of that nature, and only the standard of ordinary care applies.

**3.—Same—Presumptions—Directions for Use and Operation—Evidence.**

The machine involved in this accident had on it directions for its use and operation, and it is held that when a machine is sold accompanied by such directions, the maker can not be held to a greater degree of care in its construction than to construct it of reasonable strength and fitness when used in accordance with directions. In this case it was contended, on proof of the manner of use, that the explosion itself was evidence of defendant's negligence. But the rule it that while the circumstances attending the occurrence may be sufficient to establish negligence without direct proof of the fact, yet such presumption can not arise from the fact alone. Note evidence for plaintiff held not to establish negligence.

**4.—Same—Proof of Negligence.**

The fact that since this accident the defendants have constructed their machines of stronger materials is not evidence of former negligence.

**5.—Same—Evidence.**

Evidence that a certain character of metal was stronger than that of which the machine was constructed, and that parts of the machine left uninjured by the explosion were weaker than the parts blown out, insufficient to show negligence.

Error from the District Court of Frio. Tried below before Hon. E. R. Lane.

*Jno. L. Little, Duval West,* and *J. N. Spann,* for plaintiff in error.

*R. W. Hudson* and *C. A. Davis,* for defendant in error.

JAMES, CHIEF JUSTICE.—Plaintiff, aged 17 at the time of injury, suing by his father and next friend, J. E. Talley, alleged in substance that Beever & Hindes, a partnership firm, sold to J. E. Talley a "pear burner," a machine of their own manufacture, to be operated by the use of gasoline for the purpose of burning prickly pear on his ranch; that plaintiff while pumping air into the cylinder or tank containing the gasoline in order to form the gas, and while he was following directions for using the machine, the cylinder burst from the pressure of the gas within, and the gas expelled therefrom becoming ignited at a fire close by, caused plaintiff his injuries. The petition alleged, among other grounds for defendant's liability, that they were negligent in using weak and defective material in making the machine, and also negligent in

having the top of the cylinder insecurely fastened or attached to the cylinder.

Although other issues than negligence were set up in the petition, such as misrepresentations and warranty concerning the machine as to its safety for use, the trial court submitted the case on negligence alone, and plaintiff did not request any other submission. The verdict was for defendants. Under these circumstances we must treat all other issues or grounds for defendant's liability as properly out of the case.

We have come to the conclusion that the evidence does not show that defendants were guilty of negligence, and if this be correct, the errors assigned are immaterial.

The machine was not sold to plaintiff, but as the father testified that he informed defendants' agent of whom he bought it that he was buying it for his sons to use on his ranch, and as the court proceeded upon the theory that plaintiff was a person entitled to complain of defendants' negligence, we shall, without discussing that question, assume that defendants were liable to him for negligence.

Defendants could in this case be held to the exercise of ordinary care in the construction of the machine, but not to that high degree of care which is required of persons selling articles which are inherently, imminently and necessarily dangerous when used. In Thomas v. Winchester, 6 N. Y., 397, a widely approved case, a dealer in drugs labeled a deadly poison as harmless, and he was held to be liable to all persons injured in consequence of such label, through whomsoever hands the drug may have passed. The same court refused to extend this rule to a case such as the one before us. Losee v. Chute, 51 N. Y., 494. The rule seems to be that one who deals with a thing which is inherently very dangerous, involving both death and bodily harm to some person as the natural and almost inevitable consequence of lack of care, owes to the public at large the duty of extreme caution. The machine in question was not a thing of that nature, and only the standard of ordinary care applies. Reiss v. N. Y. Steam Co., 128 N. Y., 103.

It appears that on this machine there were directions for its use, and we are of opinion that when a machine is sold accompanied by directions for its use, the maker should not be held to a greater degree of care in its construction than to construct it of reasonable strength and fitness when used in accordance with directions. Such use is contemplated, and the thing is manufactured to be so used. However, plaintiff testified that he was following the directions, with which he was familiar, at the time he was hurt. He says he was pumping air into the cylinder, which contained the gasoline, and had made the proper number of strokes, when the top blew off. He also testified that the machine had not been exposed to the heat of the fire, so that according to his testimony and that of his brother who was with him, the machine may be said to have burst when operated substantially in accordance with the directions, and from the pressure of the gas formed in the cylinder.

The explosion, it is contended, was evidence of the defendant's negli-

gence. The rule is that such presumption does not arise from the fact alone. McCray v. Railway Co., 89 Texas, 168; Broadway v. Gas Co., 24 Texas Civ. App., 603; Reiss v. N. Y. Steam Co., 128 N. Y., 103.

As explained in the McCray case the circumstances attending the occurrence may be sufficient to establish negligence without any direct proof of the fact. The only departure which plaintiff shows he made from the directions was that he did not see that the jet was open. We can not see how this omission contributed to the explosion. The stopcock was to be closed while the air was being pumped in, therefore it seems that whether the jet was open or obstructed was of no consequence. There is some probability that the heat from the fire had something to do with the explosion, but not if plaintiff's testimony be accepted as true. Hence it might seem that plaintiff having testified that he was using the appliance according to directions and while so doing was himself not guilty of negligence, the jury would have been authorized to infer defendant's negligence from the fact of the explosion under these circumstances. This might with some reason be claimed if the further fact had been shown that the machine was in the same condition as when it left defendant's hands. There was nothing to show this. The machine had been bought for use on the ranch in procuring feed for cattle in winter. It had been on the place some time. It had been used, the evidence does not show to what extent. The father testified he did not know how many times plaintiff had used it. Plaintiff says he had used it before that morning, but says nothing more on this subject. It appears to have been turned over to the boys to use, and it is well known that boys are not ordinarily careful in handling appliances of that character. What that machine had been through was not explained. It ought not to be presumed, in order to support the other presumption, that it was in the same condition and had not been impaired by use or ill treatment. We are therefore of opinion that the circumstances shown were not sufficient to constitute the explosion proof of defendant's negligence.

It is also claimed that negligence appears from the fact that defendants since this accident have constructed their cylinders of brass, a stronger material than lead plate iron of which the cylinder in question was made, and have riveted the tops of the cylinders instead of double seaming them, the former making a stronger fastening. This we think was not evidence of former negligence. It was evidence that defendants built their new machines of stronger material and by stronger fastenings than their old ones, but was not evidence that the old ones were defective and not reasonably safe for the uses intended or that defendants had not exercised reasonable care in their manufacture.

The testimony of witness Chatfield is referred to as showing negligence, as follows: "I live in San Antonio and am a metal worker. Have had twenty-seven years experience as such. I am acquainted with the different kinds and classes of material. This [referring to pear burner] is made of a 22 or 24 lead-plated iron. No. 20 and 16 lead

plate is stronger and thicker than this. Lead is put on to keep the rust from eating iron. I have no experience with pneumatic pressure applied to gasoline for heating purposes and do not understand the principles of pneumatics, hydraulics, etc. My experience has been a tinner and metal worker. I do not know by actual experience how much pressure per square inch a metal like this will stand when manufactured into a cylinder like this one. [Referring to exploded burner.] I do know from my twenty-seven years as a metal worker what effect double seaming would have upon this kind of material. It would in my opinion weaken it, especially at the end where coil is attached, as that is put in last and requires two turnings of the iron by hand which would be calculated to fracture the fibers of the iron. If the ends of the machine were riveted it would be much safer, because the metal is not strained. Riveting would make it stronger in my judgment. Of course if heavier metal had been used it would have been stronger. The swedges around this can or cylinder in my judgment would tend to weaken the cylinder. The seaming in this head is still intact, and the head must have blown out. I don't think it was melted out. No. 22 and 24 refer to weight of the material. Brass is much better for a machine of this character because it is much stronger and more flexible than iron."

Cross-examined: "The weakest seam in my judgment is the long seam running from end to end. It is still intact and has not opened at all. It should have been the first to break, as it was the weakest place. Yes, we swedge tall lard cans and boilers. Yes, that is to make them stiffer, but think it makes it weaker. I don't know whether that strengthens them or not against pressure; suppose it does; think perhaps swedging is used for that purpose. Don't know what pressure this material [referring to exploded can] will stand to the square inch. Don't know how much pressure was necessary to operate machine. Don't know how much pressure twenty-five or thirty strokes of the pump will put in them. I have made gasoline stoves."

His testimony was that No. 16 and No. 20 lead plate iron is thicker and stronger than No. 20 or No. 24 of which the burner in question was made. There is nothing, however, in his testimony which shows that the material of which this burner was made was not strong enough. He says that double seaming in his opinion has the effect of weakening this kind of material and calculated to fracture the fibers. This evidence amounted to nothing at all, because the material of this cylinder was not injured nor fractured. The undisputed evidence is that the top was blown out entirely, and that the seaming was left intact. He says that if the ends were riveted it would be much safer and a heavier metal would have been stronger, but he nowhere undertakes to say that the material of which the machine was composed and the manner in which the end was fastened were not safe and strong enough for the uses of the machine as it was designed to be used, and he does not even express an opinion thereon. His whole testimony is to the effect that the cylinder could have been built stronger, and this was insufficient

to prove negligence in the construction of the machine. He nor any other witness testified to any defective workmanship. The material of which the cylinder was made was in fact sufficient as it did not break. The seaming was sufficient as it was intact. The only difficulty appears to have been in using double seaming instead of rivets, the latter being stronger in the judgment of this witness. He stated that in his opinion the effect of double seaming would be to weaken the end, as it required two turnings of the iron, which would be calculated to fracture the iron. However, as the iron of this machine was intact after the explosion, the weakening effect upon it of double seaming, if this witness was correct, had no connection with this accident. The entire testimony of this witness is in substance that the burner could have been manufactured stronger. If that high degree of care which the law under certain circumstances imposes on persons who place upon the market things inherently and necessarily dangerous, or which is imposed on carriers in favor of passengers, were applicable here, there was probably sufficient proof in this case to present a case of negligence against defendants. But they being responsible only for lack of ordinary care in manufacturing this appliance, the testimony was insufficient.

None of the above items of testimony being sufficient of itself to prove negligence, they do not have that effect taken together.

The judgment being correct upon the whole evidence, it will not be reversed on account of any of the assignments of error which appear in appellant's brief. Affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

The case of Tyler v. Moody, 63 S. W. Rep., 433, was a case in which the purchaser himself was held entitled to recover on a warranty for damages sustained by him. The present action is not for damages sustained by the plaintiff's father, who purchased the machine and to whom the warranty was made, if at all. He alone could recover by reason of a warranty of the article. The only theory upon which plaintiff could sustain a recovery is that of defendant's negligence. Standard Oil Co. v. Murray, 119 Fed. Rep., 572; Peters v. Johnson, 41 S. E. Rep., 190. The motion is overruled.

*Overruled.*