Lonzrick, Appellant, *v.* Republic Steel Corp., Appellee.

[Cite as Lonzrick v. Republic Steel Corp., 1 Ohio App. 2d 374.]

(No. 27055—Decided February 25, 1965.)

*Messrs. Hahn & Swadey* and *Mr. Lad J. Roth,* for appellant.
*Messrs. Jones, Day, Cockley & Reavis,* for appellee.

Skeel, J. This appeal comes to this court from a judgment entered for the defendant by the Court of Common Pleas of Cuyahoga County. The action is one for money only. The plaintiff alleges in his petition that he suffered certain personal injuries when "steel bar joists" manufactured by the defendant, which had been placed in a building, collapsed and fell down upon him. The plaintiff was a construction worker, employed by a sub-contractor, the Valley Steel Erectors, Inc. The joists were purchased from the defendant by the general contractor. The cause of action, as stated by the plaintiff, is based on a claim of a breach of the duty imposed by law on the defendant to furnish merchantable joists to the general contractor. No claim of privity between the plaintiff and defendant is stated in the petition, and under the facts stated no such claim could be made.

We are, therefore, confronted with the question whether the petition states a cause of action. If the rule of the case in *Wood* v. *General Electric Co.* (1953), 159 Ohio St. 273, is to be found applicable, then the court's order sustaining the demurrer filed by the defendant to plaintiff's petition and entering judgment for the defendant, the plaintiff not desiring to plead further, must be affirmed.

This question requires a survey of the rapidly changing theory of "product liability." The earlier rule, requiring privity between buyer and seller as a basis for creating liability under an express warranty grew out of the proposition that no such obligation was created until a promise was separately made upon request of the buyer. Such a warranty was said to be collateral in character and enforceable by an action in tort. As then understood, a breach of such a promise did not breach the contract of sale, and, without such a collateral promise, the doctrine of *caveat emptor* applied. The transition of product liability from *caveat emptor* to strict tort liability, regardless of privity, where the manufacturer or dealer induces the sale under the law of express warranty, is set out in the case of *Rogers* v. *Toni Home Permanent Co.*, 105 Ohio App. 53, from page 56 to page 76, inclusive, which statement of the law we hereby adopt without quoting at length.

An implied warranty is one imposed by law which under the Uniform Commercial Code dealing with sales, Section 1302.27, Revised Code, writes into an agreement of sale certain obligations imposed upon the seller by law and requires the seller to be responsible for certain qualities to be possessed by the goods sold unless clearly negated by the sales contract. This statute does not deal with the rights of third persons not parties to the sale who come into possession of the goods and use them in the manner intended by the manufacturer and are thereby injured by reason of the faulty condition of the goods latent in character due to improper manufacture or the use of faulty materials. The rule, as developed by the cases, was clearly stated by the Supreme Court of West Virginia in the case of *Peters* v. *Johnson, Jackson & Co.* (1902), 50 W. Va. 644, 41 S. E. 190, where it is said, at page 647:

"* * * The question is, has the defendant broken a duty apart from the contract? If he has simply broken his contract,

none can sue him but a party to it; but if he violated a duty to others, he is liable to them. * * *''

That was one of the earlier cases dealing with product liability involving an injury to the plaintiff when saltpeter was mistakenly delivered for epsom salts by a druggist to a member of the household. Thereafter, plaintiff, a visitor at such household, used the mislabeled drug. The case was decided for the plaintiff because of the danger created to all who might be expected to be misled by the false label erroneously put on the container of a dangerous drug.

In "Handbook Of The Law Of Torts" by Dean William L. Prosser (Second Ed.), Chapter 17, at page 497, the author states under the heading "Liability of Suppliers to Third Persons":

"84. It is now generally agreed that a seller, or other supplier of chattels for a consideration, may be liable for harm to the person or property of a third person who may be expected to be in the vicinity of the chattel's probable use, if he has failed to exercise reasonable care to make the chattel safe for the use for which it is supplied."

See, also, Chapter 19, Sections 97, 98 and 99, beginning at page 672, of the Third Ed. of the same work.

That such a strict tort liability could be enforced by persons not parties to the agreement of purchase was not recognized until recent years. The author at page 497 cites the case of *Winterbottom* v. *Wright* (1842), 10 M. & W. 109, 11 L. J. Ex. 415, 152 Eng. Rep. 402, as the basic authority denying liability of the manufacturer to third persons injured by the proper use of a negligently constructed product. With a few exceptions (dealing with food and inherently dangerous products) the rule as thus stated continued until 1916 when the case of *MacPherson* v. *Buick Motor Co.* (1916), 217 N. Y. 382, 111 N. E. 1050, L. R. A. 1916F 696, Ann. Cas. 1916C 440, was decided, Judge Cardozo writing the majority opinion. The facts of the *MacPherson case* were that MacPherson (the ultimate purchaser) purchased a new Buick automobile from a dealer. The wooden spokes of one of the wheels collapsed whereby plaintiff (purchaser) was injured. Beginning on page 499 of Prosser's work on Torts (*supra*), the author says "Cardozo's opinion struck through the fog of the 'general rule' and its various exceptions, and held the maker liable for negligence. On its face the decision pur-

ported merely to extend the class of 'inherently dangerous' articles to include anything which would be dangerous if negligently made. But its reasoning and fundamental philosophy was clearly that the manufacturer, by placing the car upon the market, assumed a responsibility to the customer, resting not upon the contract but on a relation arising from his purchase, and the foreseeability of harm if proper care were not used. * * *"

The theory of liability of the manufacturer or producer of chattels to the ultimate consumer without privity for negligence in producing the property, which negligence proximately caused injury or damage to the ultimate consumer while in the proper use of the property, is now almost universally accepted. Only the difficulty of proving negligence in the manufacturing process prevents such remedy from giving adequate relief to the ultimate consumer injured as a proximate result of the lack of care in producing the goods purchased. However, with the right to pursue the manufacturer for damages due to dangers created by the negligent manufacture of his product, based on negligence, it was to be expected that the law would expand carrying the responsibility of a manufacturer for the negligent or careless manufacture of his goods, which carelessness created a danger to the consumer when using them in a proper manner, even further and find (as is true as to all persons whose negligence proximately causes injuries to others) grounds for enforcing strict tort liability against the producer whose negligence or lack of reasonable care in producing the goods is the direct cause of injury to the consumer. The source of such an obligation, when recognized, is created by law and has no dependence whatever on contractual relations between the parties. The soundness of this result is established by the weight of authority in recent decisions by many of the courts of last resort in the several states.

In the case of *Bender* v. *Champion Lamp Works Division of Consolidated Electric Lamp Co.*, 40 Misc. 2d 139, 242 N. Y. S. 2d 835, the action was for consequential damages sustained by husband and wife when a projector-type flood light manufactured by the defendant exploded or imploded when the wife was removing it from the electrical socket after it ceased to function. The defendant moved to dismiss the cause because the action was based on implied warranty even though there was no privity

between the parties. In the headnote of the New York Supplement Reporter, 2d Series, it is said:

"An ultimate consumer of a projector type flood light could maintain a cause of action for breach of implied warranty of merchantability against manufacturer following explosion of the light as she attempted to unscrew it from a socket, even though there was no privity of contract between the parties."

At page 140 of 40 Misc. 2d, the court states:

"The long-established court-made rule requiring privity of contract between parties in an action for breach of warranty * * * has been overturned by two recent landmark decisions of the Court of Appeals (*Greenberg* v. *Lorenz,* 9 N. Y. 2d 195 [1961]; *Randy Knitwear* v. *American Cyanamid Co.,* 11 N. Y. 2d 5 [1962] * * *."

And then, on page 141, the court said:

"Moreover, in a number of modern decisions involving suits by consumers against suppliers where technical privity was lacking, this trend has been continued. (*Thomas* v. *Leary,* 15 A. D. 2d 438 * * *; *Simpson* v. *Eichenbrunner,* 31 Misc. 2d 958, * * *; *Amie* v. *Laure,* 16 A. D. 2d 736 * * *; *Williams* v. *Union Carbide Corp.,* 17 A. D. 2d 661 * * *.) If the strict requirement of privity is to be liberalized, the distinguishing facts in this case from those in the cases cited would not be controlling. To decide for the plaintiff here is another 'logical and progressive step' (*Thomas* v. *Leary, supra*)."

The case of *Greenberg* v. *Lorenz,* 9 N. Y. 2d 195, 213 N. Y. S. 2d 39, involved an action for damages sustained by an infant member of the family when a piece of sharp metal which caused the injury was contained in a can of salmon, such can having been purchased by the father. In the first headnote of the New York Supplement Reporter, 2d Series, it is said:

"Fact that infant's father, not infant, purchased canned salmon containing sharp metal which injured infant, would not preclude infant from recovering from retailer for breach of warranty of fitness and wholesomeness."

That decision required the court to overrule a number of previous decisions holding no action for breach of warranty could be maintained without privity.

In the case of *Randy Knitwear, Inc.,* v. *American Cyanamid Co.,* 11 N. Y. 2d 5, 226 N. Y. S. 2d 363, the plaintiff claimed a

breach of an express warranty by the defendant (resin manu-turer) for damages resulting from the use of its product which is used by textile manufacturers to prevent shrinking of fabrics. The plaintiff purchased fabrics from mills licensed by the defendant to treat and sell them under the defendant's label and with the guaranty that the clothes would not shrink when they were "Cyana" finished. The defendant had advertised that the use of its product would make the goods so treated shrinkproof. After the issues were joined a motion for sum-mary judgment was filed on the basis that there was no privity between the plaintiff and defendant. The court denied the mo-tion, holding that substantial fact issues precluded summary judgment for defendant notwithstanding lack of privity between it and the garment dealer (plaintiff). The court said on page 12 of 11 N. Y. 2d:

"The world of merchandising is, in brief, no longer a world of direct contract; it is, rather, a world of advertising and, when representations expressed and disseminated in the mass com-munications media and on labels (attached to the goods them-selves) prove false and the user or consumer is damaged by reason of his reliance on those representations, it is difficult to justify the manufacturer's denial of liability on the sole ground of the absence of technical privity. * * *"

The case of *Kotiadis* v. *Gristede Bros., Inc.*, 20 A. D. 2d 689, 246 N. Y. S. 2d 662, involved injuries sustained by the explosion of a can of grapefruit sections which was purchased from a supermarket. The fifth paragraph of the headnotes in the New York Supplement Reporter, 2d Series, states:

"Supermarket customer who was injured when a can of grapefruit sections which she purchased in a supermarket ex-ploded later in her home could, under the circumstances, assert a claim based upon implied warranty for improper packing or defective can against either the supermarket operator or the canner."

In the case of *Public Administrator of New York County* v. *Curtiss-Wright Corp.*, 224 F. Supp. 236, an action was brought for personal injury and wrongful death arising out of the crash of an airplane equipped with engines manufactured by the de-fendant. At page 239, it is stated:

"Florida courts entertain suits for breach of implied war-

ranties of fitness and merchantability in the absence of privity. As the Florida Supreme Court stated in *Hoskins* v. *Jackson Grain Co.*, 63 So. 2d 514, 515 (Fla. 1953):

" 'There is a conflict of opinion about the accountability of a manufacturer to a consumer on the theory of implied warranty in the absence of privity, but this court has become aligned with those courts holding that suit may be brought against the manufacturer notwithstanding want of privity.' "

Also, in the case of *Deveny* v. *Rheem Manufacturing Co.* (1963), 319 F. 2d 124, a water heater exploded injuring a child who was a house guest. The eleventh and twelfth paragraphs of the headnotes state:

"11. Under presumed law of Vermont, lack of privity of contract does not preclude manufacturer's liability for breach of implied warranty fitness of product.

"12. Vermont statute requiring notice of breach of warranty to be given by buyer to seller is not applicable where action is brought against seller by person who is not a buyer. * * * ."

In that case the trial judge charged the jury, essentially, "that a manufacturer of an article which would be dangerous to life or limb if defectively manufactured impliedly warrants its fitness for the benefit of all who are likely to be hurt by the use of an unfit item. * * *."

The case of *Ross* v. *Philip Morris & Co., Ltd.* (1964), 328 F. 2d 3, was one in which damages were sought because defendant did not warn of the probability of lung cancer resulting from smoking defendant's cigarettes. Paragraphs two and three of the headnotes state:

"2. Under Missouri law, lack of privity between manufacturer and consumer of cigarettes is not in itself a bar to recovery from alleged breach of implied warranty.

"3. Under Missouri law, when implied warranty claim is asserted by purchaser based on injuries from food or beverages manufactured for human consumption, rule of strict liability prevails, with or without privity, regardless of negligence."

The Missouri rule was founded by its Supreme Court in the case of *Morrow* v. *Caloric Appliance Corp.* (Mo., 1963), 372 S. W. 2d 41, that involved the explosion of a gas stove. The eighth paragraph of the headnotes provides:

"Privity of contract was not necessary in order for ultimate purchasers of gas range to recover from foreign corporate manufacturer on implied warranty for fire damage caused by stove which caught on fire as result of defective valves which were integral part of stove; manufacturer was strictly liable."

The case of *King* v. *Douglas Aircraft Co., Inc.* (Fla.), 159 So. 2d 108, is an action brought by a passenger for injuries suffered in a crash of a plane manufactured by the defendant. The first paragraph of the headnotes provides:

"A manufacturer of a product, which, if negligently made involves unreasonable risk of harm to those using it for the intended purpose, may be held liable to third parties for resulting injuries."

The court there quoted from 2 Restatement of Law of Torts 1084, Section 398, as follows:

" 'A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel lawfully or to be in the vicinity of its probable use, for bodily harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design.' "

(See, also, Section 395 of the same work, at page 793.)

At page 110 of 159 So. 2d the court states:

"In the recent case of *Goldberg* v. *Kollsman Instrument Corp.*, the New York Court of Appeals held that an airplane manufacturer's implied warranty of fitness of the airplane for the contemplated use ran in favor of an airline passenger, stating:

" 'In MacPherson's day enforcement required a suit in negligence. Today we know from *Greenberg* v. *Lorenz*; *Randy Knitwear, Inc.*, v. *American Cyanamid Co.* (*supra*), and many another decision in this and other states (see, for instance, *Henningsen* v. *Bloomfield Motors, Inc.*, 32 N. J. 358, 161 A. 2d 69, 75 A. L. R. 2d 1, and *Thomas* v. *Leary*, 15 A. D. 2d 438, 225 N. Y. S. 2d 137) that, at least where an article is of such a character that when used for the purpose for which it is made it is likely to be a source of danger to several or many people if not properly designed and fashioned, the manufacturer as well as the vendor is liable, for a breach of law-implied warranties, to the persons whose use is contemplated. The *MacPherson* holding was an

"extension" of existing court-made liability law. In a sense, *Greenberg* v. *Lorenz* and *Randy Knitwear, Inc.,* v. *American Cyanamid Co.* (*supra*) were extensions in favor of noncontracting customers. But it is no extension at all to include airplanes and the passengers for whose use they are built—and, indeed decisions are at hand which have upheld complaints, sounding in breach of warranty, against manufacturers of aircraft where passengers lost their lives when the planes crashed (see, *e. g.*, *Conlon* v. *Republic Aviation Corp.*, D. C., 204 F. Supp. 865; *Middleton* v. *United Aircraft Corp.*, D. C., 204 F. Supp. 856; *Ewing* v. *Lockheed Aircraft Corp.*, D. C., 202 F. Supp. 216; *Hinton* v. *Republic Aviation Corp.*, D. C., 180 F. Supp. 31).' "

There are many additional cases recently decided that support the almost universal change in the case law allowing recovery by a third person not in privity with the manufacturer for injuries suffered because of failure to exercise reasonable care in producing the chattel. Among such cases are the following:

*Jarnot* v. *Ford Motor Co.*, 191 Pa. Super. 422, 156 A. 2d 568, defective king pin caused crash, citing *Knapp* v. *Willys Ardmore, Inc.*, 174 Pa. Super. 90, 100 A. 2d 105.

*Spence* v. *Three Rivers Builders & Masonry Supply, Inc.* (1958), 353 Mich. 120, 90 N. W. 2d 873. The fourth paragraph of the headnotes (North Western Reporter, 2d Series) provides:

"Where the manufacturer was guilty of a lack of due care in failing to inspect or test raw materials, or furnished blocks, which were defective, buyer of such blocks was entitled to recover damages sustained by their use from manufacturer, either on the theory of negligence, or implied warranty, even if buyer was a remote buyer with whom manufacturer had no direct contractual relations."

*Pabon* v. *Hackensack Auto Sales, Inc.* (1960), 63 N. J. Super. 476, 164 A. 2d 773, wherein steering wheel locked so that car went out of control. See third paragraph of headnotes.

*Continental Copper & Steel Industries, Inc.,* v. *E. C. "Red" Cornelius, Inc.* (Fla. Court of Appeals, 1958), 104 So. 2d 40, claimed breach of warranty of electric cable, the court holding privity of contract was not necessary. See third paragraph of headnotes.

*Henningsen* v. *Bloomfield Motors, Inc.*, 32 N. J. 358, 161 A. 2d 69, 75 A. L. R. 2d 1.

*Gottsdanker* v. *Cutter Laboratories*, 182 C. A. 2d 602, 6 Cal. Rep. 320.

*Williams* v. *Union Carbide Corp.*, 17 A. D. 2d 661, 230 N. Y. S. 2d 476.

*General Motors Corp.* v. *Dodson* (1960), 47 Tenn. App. 438, 338 S. W. 2d 655, defective braking system.

From the foregoing authorities it is clear that one who is injured as a result of the use of a defective chattel may look to the producer for redress. Privity is not a necessary element of such an action. Such liability is imposed by rule of law as pronounced by the highest judicial authority. The world of merchandising is no longer a world of direct contract. Goods are produced to be used by ultimate purchasers, and the representations of the manufacturer through and by the production thereof for use in the channels of commerce, at least, impliedly intend to induce their use in the justifiable belief that, when used as intended, there will be no danger of injury to others. See "The Assault Upon The Citadel (Strict Liability To The Consumer)" by Dean William L. Prosser, 69 Yale Law Journal 1099, and "Strict Liability In Tort For Defective Products" by Edward L. Lascher, 38 Southern California Law Review 30.

There are, therefore, three methods by which one who suffers injury or damage in using a chattel delivered by the manufacturer or the vendor in a defective condition may proceed to seek redress against the manufacturer:

1. Where the ultimate purchaser stands in a contractual relation with the producer or vendor, an action (if justified by the facts) for breach of express or implied warranty may be maintained as provided by the Uniform Commercial Code.

2. By an action charging negligence in producing the chattel as held in *MacPherson, supra*, regardless of privity.

3. By an action seeking to enforce "strict tort liability without privity." *Vandermark* v. *Ford Motor Co.* (1964), 37 Cal. Rep. 896, 391 P. 2d 168, and the authorities above cited.

*Wood* v. *General Electric Co.*, 159 Ohio St. 273, is clearly distinguishable from the case here considered. The petition in *Wood* attempts to state a cause of action under the first method as set out above. That part of the petition attempting to charge liability against the defendant is as follows:

"During the month of December, 1946, plaintiffs purchased

at retail through a dealer in the city of Columbus, Ohio, a certain electric blanket manufactured by the defendant, General Electric Company, in the original package as it had come from its said manufacturer upon the implied warranty that said electric blanket should be of merchantable quality and reasonably fit for the purpose of use in plaintiff's home as an article of bedclothing.''

That action is clearly based on an alleged promise of the defendant to furnish a blanket reasonably fit for the purpose it was intended to serve. There can be no doubt that the alleged facts did not intend to assert a claim for damage based on strict tort liability.

In the case now before us, the plaintiff states facts which show that he had no contractual relations with the defendant and that he bases his claim on "strict tort liability." While the words "implied warranty" are used, they are intended to mean and describe the duty and representation of a producer of chattels to the buying public that his goods may be used for the purposes intended without danger to the purchaser from latent defects making their use dangerous to the user. The use of the word "warranty" is probably improper; however, the courts, in describing causes of action for strict tort liability in product cases, seem to have continued to use it for want of a better word, not intending it to mean anything more than the manufacturer putting his goods into the stream of commerce, thereby representing that they are of merchantable quality, unless a different intention is clearly expressed. In the case of *Greenman* v. *Yuba Power Products, Inc.* (1963), 59 Cal. 2d 57, 377 P. 2d 897, on page 63, the court said:

"Although in these cases strict liability has usually been based on the theory of an express or implied warranty running from the manufacturer to the plaintiff, the abandonment of the requirement of a contract between them, the recognition that the liability is not assumed by agreement but imposed by law (see *e. g., Graham* v. *Bottenfield's Inc.*, 176 Kan. 68 [269 P. 2d 413, 418]; *Rogers* v. *Toni Home Permanent Co.*, 167 Ohio St. 244 [147 N. E. 2d 612, 614, 75 A. L. R. 2d 103]; *Decker & Sons, Inc.*, v. *Capps*, 139 Tex. 609, 617 [164 S. W. 2d 828, 142 A. L. R. 1479]), and the refusal to permit the manufacturer to define the scope of its own responsibility for defective products (*Henningsen* v.

*Bloomfield Motors, Inc.,* 32 N. J. 358 [161 A. 2d 69, 84-96, 75 A. L. R. 2d 1]; *General Motors Corp.* v. *Dodson,* 47 Tenn. App. 438 [338 S. W. 2d 655, 658-661]; *State Farm Mut. Auto. Ins. Co.* v. *Anderson-Weber, Inc.,* 252 Iowa 1289 [110 N. W. 2d 449, 455-456]; *Pabon* v. *Hackensack Auto Sales, Inc.,* 63 N. J. Super. 476 [164 A. 2d 773, 778]; *Linn* v. *Radio Center Delicatessen,* 169 Misc. 879 [6 N. Y. S. 2d 110, 112]) make clear that the liability is not one governed by the law of contract warranties but by the law of strict liability in tort. Accordingly, rules defining and governing warranties that were developed to meet the needs of commercial transactions cannot properly be invoked to govern the manufacturer's liability to those injured by its defective products unless those rules also serve the purposes for which such liability is imposed.''

For the foregoing reasons, the judgment of the Court of Common Pleas sustaining the defendant's demurrer and entering judgment for the defendant is reversed, and the cause is remanded with instructions to overrule the demurrer and for further proceedings.

*Judgment reversed.*

CORRIGAN and WASSERMAN, JJ., concur.