**SHAMROCK FUEL & OIL SALES CO., Inc., et al., Relators,**

v.

**Honorable Bert H. TUNKS, Judge 113th Judicial District Court of Harris County, Texas et al., Respondents.**

No. 14887.

Court of Civil Appeals of Texas. Houston.

Oct. 6, 1966.

Fulbright, Crooker, Freeman, Bates & Jaworski, Russell Talbott, Houston, for relators Shamrock Fuel & Oil Sales Co., Inc. and Keith L. Ward.

McGregor, Sewell, Junell & Riggs, Ben Sewell, Houston, for relator Johnny Hale.

Joe Jaworski, Ronald C. Kline, Houston, Bracewell & Patterson, Houston, of counsel, for respondents.

COLEMAN, Justice.

This is an original proceeding for mandamus to require the trial court to enter judgment in a cause wherein he had set aside the verdict of the jury and declared a mistrial. Among the issues to be considered are: (1) the necessity for privity in a suit for personal injuries based on implied warranty, and (2) whether contributory negligence is a defense in such a suit.

This suit was instituted by William Earl Munsinger, for himself and as next friend of his minor son, against the retailer, the distributor, and the manufacturer of kerosene oil purchased by him, which exploded when poured on a glowing coal at the direction of his minor son by another child. As a result of the explosion the minor, Omy Ray Munsinger, received serious burns and his father incurred the considerable expense of his necessary medical treatment. The explosion happened while the children were playing with fire, contrary to the instructions, and without the knowledge of their parents.

Relator Shamrock purchased the kerosene oil from a refiner in bulk and stored it in a large tank. As needed it was withdrawn from the storage tank and placed in the tank trucks owned by the company. Employees of the company then drove the trucks on regular routes to various retail establishments, including the Gulf Filling Station operated by Relator Hale. There is testimony that one of the route men visited Hale's station at two-week intervals. He would check the 55 gallon barrel in which Hale stored kerosene and, if an appreciable amount was required to fill the barrel, would remove the pump and fill the barrel. No name appeared on the barrel which was painted in the Gulf colors.

William Munsinger purchased kerosene from Hale, and there was evidence that at the time of the explosion the kerosene was adulterated by the addition of gasoline to the extent that the flash point of the kerosene was lower than that specified by Article 1104, Vernon's Ann.P.C. There was evidence that kerosene oil, with the flash point specified, when poured on a glowing coal would smoke and probably extinguish the coal, but would not explode.

The trial court granted an instructed verdict in favor of the refiners and no question concerning this action is involved in this proceeding.

The jury was unable to agree on answers to all of the issues and the parties agreed, subject to the right to object that material issues were not answered, that the court

might receive a partial verdict. The jury had not been able to agree on answers to all of any series of issues submitting the plaintiff's grounds for recovery against any of the defendants. It found that the minor plaintiff directed his brother to pour the kerosene oil on the glowing coal and that this action constituted negligence and was a proximate cause of the explosion.

Relators contend that the contributory negligence finding would have prevented a judgment for the plaintiff, no matter how the jury answered the issues on primary negligence or on implied warranty, and that in view of the finding of contributory negligence all of the other issues became immaterial. They also contend that there was no evidence of privity of contract between the injured minor and the retailer or between either of the plaintiffs and the distributor, Shamrock, and that privity of contract must exist before liability can be predicated on the breach of an implied warranty.

The trial judge expressly based his action in declaring a mistrial on his finding that material issues of fact were not answered by the jury.

The Relators concisely state the problem presented as follows:

"The two issues before this Court are simple: (1) Is privity of contract between the injured plaintiff and the defendants essential to any liability on implied warranty? (2) If the answer to (1) is no, is contributory negligence a defense to implied warranty liability?"

Neither of these questions has been determined by the Supreme Court of Texas, except in cases involving food for human consumption. In Jacob E. Decker & Sons, Inc. v. Capps, 1942, 139 Tex. 609, 164 S.W.2d 828, 142 A.L.R. 1479, the ultimate consumer brought an action for injuries to herself, her husband and other members of her family caused by eating contaminated food manufactured by Decker and sold to a retailer in a sealed container, who, in turn, sold it to the plaintiff in the same container. The Court allowed the action against the manufacturer based on an implied warranty of fitness, and held privity of contract unnecessary in such an action. The Court stated:

"While a right of action in such a case is said to spring from 'warranty,' it should be noted that the warranty here referred to is not the more modern contractual warranty, but is an obligation imposed by law to protect public health. * * * The action on a warranty sounded in tort was in the nature of an action on the case for deceit, although it was not necessary to plead or prove scienter. * * * The doctrine of privity of contract and of the necessity therefor in order to sustain an action grew out of the later action of assumpsit. It applies only when one is seeking to enforce a contract."

The Court held that a nonnegligent manufacturer, who processed and sold contaminated food to a retailer for resale for human consumption, is liable to the consumers of the food for injuries sustained as a result of the eating of such food. "Liability in such case is not based on negligence, nor on a breach of the usual implied contractual warranty, but on the broad principle of the public policy to protect human health and life."

While this case spoke only of food for human consumption, and stressed the public policy to protect human health and life, the doctrine has been extended to include drugs for human consumption or intimate bodily use. Cudmore v. Richardson-Merrell, Inc., Tex.Civ.App.1966, 398 S.W.2d 640, writ ref., n. r. e. The principle has also been extended to include cattle feed. Burrus Feed Mills, Inc. v. Reeder, Tex. Civ.App.1965, 391 S.W.2d 121.

These decisions eliminating the requirement of privity in implied warranty cases might have been predicted by reason of the opinion of the Supreme Court of Texas in United States Pipe and Foundry Co. v. City of Waco, 130 Tex. 126, 108 S.W.2d

432. There the Court held the manufacturer of pipe liable in damages to the City of Waco for breach of warranty although the pipe was purchased by a contractor and used in performing a contract with the City. In the opinion the Court cited two cases involving the sale of food, Madouros v. Kansas City Coca-Cola Bottling Company, 230 Mo.App. 275, 90 S.W. 2d 445, and Coca-Cola Bottling Company of Fort Worth v. Smith, Tex.Civ.App., 97 S.W.2d 761, and, referring to these cases, stated:

"By citing the above cases, this court does not commit itself either to the correctness of the holding in each case or to the correctness of every expression therein. Their reasoning aptly applies here, and illustrates the tendency of modern courts away from the narrow legalistic view of the necessity of formal immediate privity of contract in order to sue for breach of an express or implied warranty."

■ Strict liability was enforced in Decker because of the public policy to protect human health and life. The same policy should be, and is, applicable to products other than food which, when defective or contaminated, are highly dangerous to human life and health. Bowerman v. Goodyear Tire & Rubber Co., 105 F.Supp. 119 (N.D.Tex.1952); Siegel v. Braniff Airways, Inc., 204 F.Supp. 861 (S.D.N.Y. 1960); Crusan v. Aluminum Company of America, 250 F.Supp. 863 (E.D.Tex. 1965).

■ One selling, or offering for sale, a product, representing either expressly or by implication that it is kerosene, thereby impliedly warrants that the product is suitable for use for domestic cooking, illuminating, heating, or other domestic uses, and that the flash point of the product is 112° Fahrenheit, or higher, according to the United States official closed cup testing method of the United States Bureau of Mines. Such a warranty will be implied as a matter of law since a strong public policy to afford such protection to the citizens of this State can be discerned from the provisions of Article 1104, V.A. P.C.

■ The right to recover damages in this case, insofar as the recovery is predicated on the breach of one of these implied warranties, cannot be denied by reason of the alleged failure to prove privity of contract.

Putman v. Erie City Manufacturing Company, 338 F.2d 911 (5th Cir. 1964), strongly supports this decision. There the court considered both the applicable Texas cases, many cases from other jurisdictions, and the considered opinions of many legal scholars in reaching the conclusion that when the matter is properly presented the Supreme Court of Texas will hold that " * * * a manufacturer or assembler of a defective product, unreasonably dangerous to the user, is subject to strict liability to the user for an injury caused by the defect, even though the product is not a food for human consumption, there is no proof of negligence, and there is no privity between the user and the manufacturer or assembler." Comprehensive citations to relevant material are found in Judge Wisdom's opinion which support our decision in this case. To avoid extending this opinion we refrain from again citing the wealth of authority on this question.

In Brown v. Howard, 285 S.W.2d 752, Tex.Civ.App.1955, ref., n. r. e., it was pointed out that the rule of "implied warranty" set forth in Jacob E. Decker & Sons, Inc. v. Capps, supra, was not based on a warranty implied from the terms of a contract, but had its basis in a public policy imposed for the protection of the public health. The court emphasized that such an "implied warranty" should not be confused with a contractual warranty, either express or implied, in which privity of contract is an essential element of recovery. The court then refused to extend the rule of Jacob E. Decker & Sons, Inc. v. Capps to one formulating chemicals for use as a cattle spray

where damages for injuries to cattle from use of the spray were sought by one not in privity with the nonnegligent manufacturer. The court stated that a strong public policy was required to support a rule imposing liability without fault and determined that it was not authorized to extend the rule of Jacob E. Decker & Sons, Inc. v. Capps and make it applicable to the case under consideration, particularly in view of the fact that the Decker case emphasized "food for human consumption".

Neither this case nor Baylor v. Eastern Seed Co., 191 S.W.2d 689, Tex.Civ.App. 1945, is authority for the proposition that privity of contract is required where products presenting great danger to human life and health, when defective, are involved. However, Talley v. Beever & Hindes, 33 Tex.Civ.App. 675, 78 S.W. 23, 1903, no writ hist.; Stamford & Western Gas Co. v. Starkey, 26 S.W.2d 368, Tex. Civ.App.1930, and Dunn v. Texas Coca-Cola Bottling Co., 84 S.W.2d 545, Tex.Civ. App., writ dism., are such cases. In each of these cases the rule applicable to contractual warranties was applied and recovery refused because of lack of privity. These cases were decided long before Jacob E. Decker & Sons, Inc. v. Capps, supra, and the theory of liability applied in that case, in all probability, was not brought to the attention of the courts deciding them. The rule of law applied in this case has been carefully examined in many of our sister states since those cases were decided, and our decision is supported by recent cases from many jurisdictions. Seely v. White Motor Co., 63 Cal.2d 9, 45 Cal. Rptr. 17, 403 P.2d 145 (1965); Garthwait v. Burgio, 153 Conn. 284, 216 A.2d 189 (1965); Continental Copper and Steel Industries v. E. C. "Red" Cornelius, Inc., 104 So.2d 40 (Fla.App.1958); Wood v. Hubb Motor Co., 110 Ga.App. 101, 137 S.E.2d 674 (1964); Suvada v. White Motor Co., 32 Ill.2d 612, 210 N.E.2d 182 (1965); State Farm Mutual Automobile Insurance Co. v. Anderson-Weber, Inc., 252 Iowa 1289, 110 N.W.2d 449 (1961); Rupp v. Norton Coca-Cola Bottling Co., 187 Kan. 390, 357 P.2d 802 (1960); Dealers Transport Co., Inc. v. Battery Distributing Co., Inc., 402 S.W.2d 441 (Ky.App., June 4, 1965, as modified May 13, 1966); Spence v. Three Rivers Builders & Masonry Supply, Inc., 353 Mich. 120, 90 N.W.2d 873 (1958); Morrow v. Caloric Appliance Corp., 372 S.W.2d 41 (Mo.S.Ct.1963); Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 161 A.2d 69, 75 A.L.R.2d 1 (1960); Goldberg v. Kollsman Instrument Corp., 12 N.Y.2d 432, 240 N.Y.S.2d 592, 191 N.E.2d 81 (1963); Lang v. General Motors Corp., 136 N·W.2d 805 (N.D.S.Ct.1965); Lonzrick v. Republic Steel Corp., 1 Ohio App.2d 374, 205 N.E.2d 92, aff'd 6 Ohio St.2d 227, 218 N.E.2d 185 (1966); Marathon Battery Company v. Kilpatrick, 418 P.2d 900 (Okla.S.Ct., Dec. 28, 1965); Wights v. Staff Jennings, Inc., 405 P.2d 624 (Ore.1965); Ford Motor Co. v. Lonon, 398 S.W.2d 240 (Tenn.S.Ct.1966); Brewer v. Oriard Powder Co., 66 Wash.2d 187, 401 P.2d 844 (1965).

It has long been the rule in Texas that privity of contract is not required in a tort action based on the sale of such an explosive substance as coal oil. In Cohn v. Saenz, Tex.Civ.App.1919, 211 S.W. 492, writ den., the court held:

"* * * It is the duty of a seller of gasoline and coal oil, who knows the danger to life and health incident to the attempted use of gasoline, or any other highly explosive substance similar to gasoline, for illuminating purposes, not to sell the same as coal oil suitable for illuminating purposes. This duty he owes, of course, not only to his buyer, but, knowing that it is purchased for resale, he owes it to all who have occasion to purchase some of the substance." See also Waters-Pierce Oil Company v. Deselms, 1909, 212 U.S. 159, 29 S.Ct. 270, 53 L.Ed. 453.

In many jurisdictions contributory negligence is held to be a defense in an action to recover for a product caused injury where the basis of the action is negligence even though the product is explosive or flamma-

ble and the seller has violated a statute regulating the sale of such products. Anno., 80 A.L.R.2d, Products Liability—Explosion, etc., § 10, pp. 508–510; Gulf Refining Co. of Louisiana v. Jinright, 5th Cir. 1925, 10 F.2d 306; Rivera v. Ancient City Oil Corp. (1956), 61 N.M. 473, 302 P.2d 953; Hourigan v. Nowell (1872), 110 Mass. 470; Douglas v. Daniels Bros. Coal Co., (1939), 135 Ohio St. 641, 22 N.E.2d 195, 123 A.L.R. 761.

█ While no case by the Supreme Court of Texas has been cited directly holding contributory negligence a defense in such a case, no Texas cases have been found creating an exception to the general rule that contributory negligence of a plaintiff will bar recovery from a negligent defendant. The jury finding of contributory negligence, if supported by the evidence, would have defeated recovery in this case, no matter how the jury answered the issues on the defendant's negligence. Magnolia Petroleum Co. v. Beck, Tex.Civ.App., 1931, 41 S.W.2d 488, writ dism.; Dunn v. Texas Coca-Cola Bottling Co., Tex.Civ. App.1935, 84 S.W.2d 545, writ dism.

No Texas cases have been citing holding that contributory negligence is a bar to recovery on a cause of action based on breach of implied warranty. In Jones v. George, 61 Tex. 345, the court held that one suing for damages resulting from a breach of contract could not recover for such part of his loss as he could have avoided by ordinary care. The Court said: "If, notwithstanding the breach of contract, the appellant by the use of ordinary care, and at reasonable expense, could have avoided the loss in whole or in part, then the loss which might have been arrested by the use of such care ought not to be recovered." This appears to be a statement of the duty to minimize damages.

In Tex-Tube, Inc. v. Rockwall Corp., 379 S.W.2d 405, Tex.Civ.App.1964, no writ hist., the court held that contributory negligence precluded judgment for the plaintiff "to the extent that plaintiff's own negligence proximately caused its damage."

The court applied the rule applicable to contractual warranties, quoting from Hursh, American Law of Products Liability:

"Note that something closely akin to the idea of contributory negligence is embodied in Section 336 of the Restatement of Contracts, which states that damages are not recoverable for harm that the plaintiff should have foreseen and could have avoided by reasonable effort without undue risk, expense, or humiliation."

These decisions are not in point on the question of the availability of contributory negligence as a defense to a cause of action on a warranty implied in law for the protection of the life or health of the purchaser or user of a defective product, the cause of action not being based on contract.

There are decisions from some jurisdictions that speak of denying recovery because of contributory negligence in such actions. The opinions in other jurisdictions avoid the use of that term by grounding their decisions on a failure to show proximate cause or the duty to mitigate damages, or the failure to prove reliance on the warranty. In other jurisdictions the courts consider contributory negligence and assumption of the risk to be doctrines of the law of torts and not applicable to actions for alleged breach of implied warranties based on the law of contracts. In all events, it is apparent that the cases are in disagreement. Anno., 4 A.L.R.3rd, Products Liability—Implied Warranty, §§ 3 and 4 (at pg. 505).

This explanation for the disagreement among the courts is found in Prosser, Law of Torts, 3rd Ed., pp. 656–657:

"There has been ostensible, and quite superficial, disagreement over whether contributory negligence is available as a defense where the action is one for breach of warranty. A few decisions have said flatly that it is not. The greater number have said quite as flatly that it is. The conflict is, however, more apparent than real. If the cases are examined, it readily appears

that those which refuse to allow the defense have been cases in which the plaintiff negligently failed to discover the defect in the product, or to guard against the possibility of its existence. They are entirely consistent with the general rule that such negligence is not a defense to an action founded upon strict liability. Those which have permitted the defense all have been cases in which the plaintiff has discovered the defect and the danger, and has proceeded nevertheless to make use of the product. They represent the form of contributory negligence which consists of deliberately and unreasonably proceeding to encounter a known danger, and overlaps assumption of risk. They are quite consistent with the general rule that this is a defense to strict liability. There are only a few cases which have recognized the distinction; but it seems quite clear that it is made in fact."

The Supreme Court of Texas, in Jacob E. Decker & Sons, Inc. v. Capps, supra, and Griggs Canning Co. v. Josey, 1942, 139 Tex. 623, 164 S.W.2d 835, 142 A.L.R. 1424, adopted a rule of strict liability in food cases substantially the same as the American Law Institute, in Sec. 402A, Restatement of the Law of Torts, 2d, later applied to all products in a defective condition unreasonably dangerous to the user or consumer.

Since, under the particular factual situation here present, we are of the opinion that the strict liability rule of Decker is applicable, it follows that the question of contributory negligence as a defense should be governed by the rules applicable in other cases of strict liability.

The Restatement of the Law of Torts, 2d, Sec. 402A, Comment N. Contributory Negligence (Vol. 2, pg. 356) reads:

"Since the liability with which this Section deals is not based upon negligence of the seller, but is strict liability, the rule applied to strict liability cases (see § 524) applies. Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery."

Section 524, Restatement of the Law of Torts, Vol. 3, pg. 52, provides:

"(1) A plaintiff is not barred from recovery for harm done by the miscarriage of an ultrahazardous activity caused by his failure to exercise reasonable care to observe the fact that the activity is being carried on or by intentionally coming into the area which would be endangered by its miscarriage.

"(2) A plaintiff is barred from recovery for harm caused by the miscarriage of an ultrahazardous activity if, but only if,

"(a) he intentionally or negligently causes the activity to miscarry, or

"(b) after knowledge that it has miscarried or is about to miscarry, he fails to exercise reasonable care to avoid harm threatened thereby."

By analogy it appears that in a case such as this a plaintiff would not be barred from recovery even though his injury was caused in part by his failure to test the kerosene, or by his failure to foresee that the kerosene might have a dangerously low flash point and to guard against such a possibility. He would, however, be barred if he misused the product, that is, if, by reason of the manner in which he used the product, he would have been injured had the kerosene conformed to the statutory standard, or if, knowing that the kerosene was defective and of the danger of an ex-

plosion, he fails to exercise reasonable care to avoid the threatened harm.

 The jury finding that the injured boy was contributorily negligent in directing his brother to pour the kerosene on the glowing stick would not bar a recovery for the damage caused by the breach of an implied warranty that the kerosene had a flash point not below 112° Fahrenheit.

Relators suggest that the rule of strict liability for breach of implied warranty, whether contractual or imposed by law, is inapplicable to the Relators, with the exception of Johnny Hale, the retail dealer, under the rule of Bowman Biscuit Company of Texas v. Hines, 1952, 151 Tex. 370, 251 S.W.2d 153. In that case the Supreme Court refused to apply the rule of Jacob E. Decker & Sons, Inc. v. Capps, supra, and Griggs v. Josey, supra, to a suit by a consumer against a wholesaler. While these Relators occupy the position of a middleman, this case is not controlled by the rule of the Hines case since the product in this case was sold in bulk rather than in a sealed container. Here it is established that the product was not defective when it was delivered by the manufacturer to the wholesaler.

Apparently eight of the Justices taking part in the decision of Bowman Biscuit Company of Texas v. Hines, supra, were of the opinion that there was little or no distinction between the liability of the retailer and that of the wholesaler. Justice Wilson, in his concurring opinion, stated that he found no impelling reason to extend to a wholesaler a direct liability to the consumer, and that the rationale of the Decker case was not applicable since the wholesaler did not know or control the contents of the sealed package.

The rationale of the Decker case would appear to be applicable here, as well as that of Walker v. Great Atlantic & Pacific Tea Co., 131 Tex. 57, 112 S.W.2d 170, where the fact that the identity of the manufacturer was concealed by the middleman was sufficient to place him in the legal position of the manufacturer. Here the name of the manufacturer did not appear on the product and was not known to the buyer. If the product was defective at the time of the sale to the retailer, the defective product was placed in the stream of commerce by the wholesaler, not the manufacturer.

 The conclusion that the rule of strict liability is applicable to all vendors is in line with the views of the courts in the other jurisdictions adopting strict liability for breach of implied warranties. Anno., 75 A.L.R.2d, Products Liability—Privity, § 15; Harper and Jones, Law of Torts, Vol. 2, § 28.31, pp. 1601–1602.

 The trial court correctly declared a mistrial for the reason that the jury was unable to answer material issues submitted to it by the court's charge.

The application for a writ of mandamus is denied.