HOYT WALKER v. THE GREAT ATLANTIC & PACIFIC TEA COMPANY.

No. 7263.  Decided January 12, 1938.
Rehearing overruled February 9, 1938.
(112 S. W., 2d Series, 170.)

58

*Kirby, King & Overshiner,* of Abilene, for plaintiff in error.

Where dealer sold plaintiff a can of corn, bearing dealer's own label as distributor without disclosing the name of the canner and said can contained food poison, and plaintiff was injured by eating said corn, plaintiff had the right to sue for damages for negligence of the dealer in placing said corn on the market for sale, even though the unwholesome condition was originated by the negligence of the canner, or manufacturer. Dunn v. Coca-Cola Bottling Co., 84 S. W. (2d) 545; Brown Cracker & Candy Co. v. Jensen, 32 S. W. (2d) 227; Texas Drug Co. v. Caldwell, 237 S. W. 968; S. H. Kress Co. v. Ferguson, 60 S. W. (2d) 817.

*Touchstone, Wight, Gormley & Price,* of Dallas, for defendant in error.

A retail dealer who purchases canned goods from an independent reputable dealer and takes good care of them while in his possession and has no opportunity to inspect their condition, owes no duty to open the can and inspect its contents and is not an insurer of the safety of purchasers for some hidden defect that might be in the contents of said canned goods. Scruggins v. Jones, 269 S. W. 743; Prinsen v. Russos, 194 Wisc. 142, 215 N. W. 905; Turner v. Shackleford, 288 S. W. 815.

On the question of the inadmissibility of the doctor's testimony as to statements made to him by injured party. Lumbermen's Reciprocal Assn. v. Adcock, 244 S. W. 645; Lumbermen's Reciprocal Assn. v. Hull, 23 S. W. (2d) 842; International & G. N. Ry. Co. v. Anderson, 17 S. W. 1039.

MR. JUDGE MARTIN, of the Commission of Appeals, delivered the opinion for the Court.

The parties will carry here their trial court designation.

Plaintiff purchased from defendant a can of corn labeled, "Iona Brand Corn, Distributors, The Great Atlantic and Pacific Tea Company, New York, net weight 11 ounces." After eating this and other foods, all participants at a dinner became ill. A physician was immediately called and diagnosed the illness as ptomaine, or food poisoning. Suit was filed by plaintiff for damages to himself and wife, upon the theory of negligence, and of an implied warranty by defendant of the quality and fitness of the corn for human consumption. Both theories were submitted and upon the jury findings judgment was entered for plaintiff. This judgment was reversed and rendered by the Eastland Court of Civil Appeals. See 104 S. W. (2d) 627. The substance of that court's holding was that since defendant was shown to be only a distributor without knowledge or means of knowledge of the unfitness of the corn for human consumption, there was no liability upon either theory of recovery. We notice only that of implied warranty. There has been a sharp diversity of opinion among the courts of the United States as to the liability of a retailer, who purchases sealed cans or packages of food from a reputable manufacturer, and sells same to the public in the original containers as purchased.

The two conflicting views are well stated in the following quotations from eminent authorities:

"While there is authority to the contrary, it comports better with justice to hold that where a dealer sells to his customer an article in the original package in which it is put up by the manufacturer, and the customer knows as much about the article as the dealer, and buys it without any representation from the dealer or reliance upon his judgment, knowing that there has been no inspection of it by the dealer, there is no implied warranty, although the dealer knows that the customer buys it for food." 11 R. C. L., p. 1124.

"The imposition of absolute liability upon a dealer who sells canned goods of reputable manufacturer has been denied by the Supreme Court of Maine on the ground that the seller can not possibly discover that a particular can is defective, and that it is, therefore, unjust to subject him to liability. The same argument, however, may be made in regard to any implied warranty, not only of food, but of other articles where

the seller could not discover the defect. Accordingly, if canned goods are to be made an exception to the general rule governing sales of food, the whole law of implied warranty should be revised and placed on the basis of negligence. But the general principle of the common law is opposed to this, and certainly if a dealer is ever to be made liable for injuries caused by defective goods where he has been guilty of no fault, the reasons are stronger for holding him liable for selling defective food than in any other kind of sale. According to the weight of authority, presumably for these reasons, a dealer is liable for selling such food even though in cans of reputable brand." I Williston on Sales, pp. 481 and 482.

Contemporary with the above opinion herein, the Kansas City Court of Appeals of Missouri decided in a case whose controlling facts are identical with these, that a retailer was liable upon the theory of implied warranty. In that case as in this the name of the manufacturer was concealed, or at least not disclosed. We quote from this authority:

" * * * under common law principles there is an implied warranty as between the retail dealer and the consuming purchaser in the sale of food, including a warranty of freedom from foreign substances which may be injurious to the latter. Apparently all of the authorities agree that there should be no exception in the case of the sale of food in cans or sealed packages, unless the ends of justice would be better served by making one. We are doubtful if such ends would be better served by denying the liability of the retail dealer. There is no doubt but that the retail dealer is in a better position to know and ascertain the reliability and responsibility of the manufacturer of the article, which he is handling, than the purchaser from him. To adhere to the general rule places the responsibility upon the party to the contract best able to protect himself and to recoup himself in case of loss, because he knows, or comes in contact with, the manufacturer or the wholesaler, as the case may be, from whom he purchased the article and who, undoubtedly, would be responsible over to him, upon a proper showing, on the theory of breach of implied warranty of fitness, * * *." Degouveia v. H. D. Lee Mercantile Co., 100 S. W. (2d) 339.

We would be trespassing upon the time of the bench and bar to lengthen this opinion by a review of the authorities pro and con upon the questions at issue. That task has already been well performed as shown in 5 A. L. R., p. 248 et seq., and 90 A. L. R., p. 1269 et seq.

1 It will be noted that in the present case the Court of Civil Appeals in reaching the conclusion that no implied warranty exists emphasizes the lack of knowledge or means of knowledge on the part of the seller of the unfitness of the food for human consumption. We turn aside here briefly to note that the Texas statute, known as our Pure Food Laws, in pointed language repudiates this as a defense in all prosecutions for the sale of adulterated foods. Article 717 of the Penal Code in part provides:

" * * * It shall not be necessary for the indictment to allege or for the State to prove that the act or omission was knowingly done or omitted."

Again:

"No dealer shall be prosecuted under this chapter when he can establish a guaranty signed by the wholesaler, manufacturer, or other party residing in the United States from whom he purchased such article, to the effect that the same is not adulterated or misbranded within the meaning of this Act, designating it. Said guaranty, to afford protection, shall contain the name and address of the party making the sale of such article to such dealer, and in such case said party shall be amenable to the fines and other penalties which would attach in due course to the dealer under the provisions of this chapter." Article 714, Penal Code.

See also Articles 706 and 707, Penal Code, and Article 4471, R. S. 1925.

2 We mention these only to illustrate a plain legislative purpose to protect the public against the sale of poison food, and to accomplish such it was thought necessary to abrogate as a defense the very matter emphasized as proper in the opinion supra. The sale and purchase in question was made presumptively with full knowledge of the above law by both parties. Defendant's store was what in modern parlance has come to be known as a "helpy selfy." No statements were made by defendant concerning the kind or quality of the goods in question. The can of corn was so labeled as to conceal from the buyer the identity of the manufacturer. This conduct in legal effect put the retailer in the place of the manufacturer.

Whom could the buyer sue, if not the retailer? Whatever may be the general rule, we think under the particular facts of this case, the defendant was liable on an implied warranty. In so holding we follow many authorities to be found in the case cited supra. Not only so, but we give effect to a legislative

intent and public policy plainly evidenced by our pure food laws, both State and National.

**3** Over defendant's objection that such statements were not res gestae and were hearsay, the trial court permitted Dr. Griggs to testify to what plaintiff told him he and the others had eaten for dinner, made sometime after the occurrence to which they related. These were made while plaintiff was violently ill from some cause. The same facts were testified to by other witnesses and disputed by none. It sufficiently appears these statements were made as part of the history of plaintiff's illness, for the purpose of enabling the attending physician to make a diagnosis of and to treat same, and as the basis of his opinion as to the cause of such illness. From such, and the symptoms, Dr. Griggs diagnosed the case as ptomaine poisoning. It is not an open question in Texas that such evidence is admissible under the above facts and over a general objection. We quote:

"We find no error in the action of the court in permitting the physician who attended Mrs. Smith during her illness to state what she told him while he was treating her, about her exposure at the place where she left the train, in connection with his own opinion as to the cause of her sickness. The statement was made as the basis of the doctor's opinion, and not as independent evidence to establish the fact of exposure; even had the latter been the purpose, it would furnish no ground for the reversal of the judgment, as both the wife and the husband had, as witnesses, themselves fully stated every fact upon the subject, and there was no opposing evidence with regard to the circumstances attending their leaving the train, and the exposure that followed it." Pullman Palace-Car Co. v. Smith, 14 S. W. 994.

It is stated in 67 A. L. R., p. 18:

"It is generally, though not universally, held that statements by an injured or diseased person to a physician as to past matters, while not admissible as evidence of the facts stated, may be testified to by the physician to show the basis of his opinion."

A multitude of cases are cited in support of this. There are important exceptions to this, as: (1) when made to a physician to enable him to testify, Tyler S. E. Ry. Co. v. Wheeler, 41 S. W. 517, (2) or when they relate to the disputed issue of how the injury occurred. Texas & P. Ry. Co. v. Barron, 78 Texas 421, 14 S. W. 698.

Other contentions will not be discussed because not prop-

erly preserved and presented. We do not consume space in detailing questions already worn threadbare with discussion. Briefly these relate to (1) evidence, admitted over objections deemed too general, and relating to a matter already covered by similar evidence admitted without objection, and (2) matters attempted to be presented and not covered by any assignment of error or by an insufficient bill of exception.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Opinion adopted by the Supreme Court January 12, 1938.

Rehearing overruled February 9, 1938.