**SELECT INSURANCE COMPANY,**
Appellant,

v.

Janice W. PATTON, Appellee.

No. 8424.

Court of Civil Appeals of Texas,
Amarillo.

Feb. 19, 1974.

Rehearing Denied March 18, 1974.

ment was rendered that plaintiff Janice W. Patton sustained, and should recover from defendant Select Insurance Company for, total and permanent disability as a result of a July 29, 1970 injury. Defendant, the workman's compensation carrier for Straus-Frank Company of Amarillo, has marshalled a thirty-point attack on the judgment. None of the points presents reversible error. Affirmed.

Janice Patton had been employed at Straus-Frank Company for the majority of seven years prior to July 29, 1970. Straus-Frank is engaged in the business of wholesale automotive part distribution. Orders for merchandise submitted to the company are entered on invoice forms which, upon receipt, are sent to a pricing clerk whose function it is to ascertain the price of each ordered item and enter it on the invoice. At all times relevant to this case, Janice Patton performed the duties of pricing clerk. She sat at a desk and looked up prices to be entered on the invoiced items in a large looseleaf catalogue placed on a rack in front of her. For virtually the entirety of every working day she worked with this catalogue rack with her left arm extended approximately at eye level, moving the catalogue rack back and forth and the catalogue pages from side to side.

On July 29, 1970, Mrs. Patton was performing her duties in a small office provided for her, for Doris Anderson, her assistant, and for a telephone operator. Both Mrs. Patton and Mrs. Anderson testified that Mrs. Patton moved a catalogue page with her left arm and made a sound similar to "Oh!" Mrs. Anderson recalled that Mrs. Patton said, "I have pulled something." It was Mrs. Patton's recollection that she said she "had hurt myself." She continued working that day and the final two days of the week, but was able to use only her right arm in turning the pages of the catalogue. Subsequent to July 31, 1970, Mrs. Patton has not worked at Straus-Frank nor at any gainful employment.

Underwood, Wilson, Sutton, Heare & Berry, R. A. Wilson, Amarillo, for appellant.

Kolander, Templeton & Hamilton, R. C. Hamilton, Amarillo, for appellee.

REYNOLDS, Justice.

On the strength of the jury's findings in this workmen's compensation case, judg-

Mrs. Patton's claim before the Industrial Accident Board was denied because the evidence "fails to establish that the claimant suffered a compensable injury in the course of employment for subscribing employer herein as alleged." Thereupon, Mrs. Patton brought this suit, resulting in the setting aside of the Board's decision and the rendition of the judgment from which Select has appealed.

Initially, Select asserts that the trial court erred in overruling Select's motions addressed to jurisdictional deficiency on the ground that Mrs. Patton failed to file a timely claim giving notice of a specific incident which would constitute a legally compensable injury. In this connection, a plea in abatement proposed that a fatal variance existed between the first claim, characterized as describing quite clearly a noncompensable occupational disease, filed with the Board, and the compensable injury claim asserted in this suit. A sworn motion denying jurisdiction was premised on the failure to give timely notice of the specific injury now claimed and that good cause therefor was not pleaded. This assertion of error revolves around the first notice of claim prepared by Mrs. Patton and dated September 25, 1970; an amended notice of injury claim dated October 3, 1972; and the claim pleaded in the district court.

The first notice of claim submitted to the Industrial Accident Board was prepared personally by Mrs. Patton on a form entitled "Notice of Injury and Claim for Compensation" under the date of September 25, 1970. Her description of the condition for which compensation was claimed reads:

"The left rib cartilage became inflamed and is causing swelling of the rib cage. It is very painful. It was caused by constant lifting of heavy pricing catalogs during my job as pricing clerk."

She entered on this form the date of August 12, 1970, as the date on which the injury occurred.

Subsequent to retention of counsel by Mrs. Patton, an amended claim form was prepared and signed on October 3, 1972, and it was submitted to the Board prior to its final resolution of the claim. The date of injury listed on this form was "on or about July 29, 1970," and the injury description was recorded:

"I was flipping a particularly heavy pricing catalog when I felt a severe straining, pulling and tearing of the left front side of my rib cage, causing me severe pain. Shortly thereafter my rib cage began to swell and became inflamed from this injury. I became totally and permanently disabled to perform my ordinary duties and my job, and I claim maximum benefits for total and permanent disability under the Workman's Compensation Act of the State of Texas."

Mrs. Patton's trial petition alleged the same facts as did her amended notice of injury. Select argues that the first notice of claim submitted by Mrs. Patton on September 25, 1970, described an occupational disease rather than an accidental injury; that, while a claim may be amended before the Board disposes of the claim, the amended claim of October 3, 1972, describing an injury was not a permissible enlargement of the first claim; that since the amended claim was not filed within the time prescribed and no good cause for the untimely filing being shown, it cannot be the jurisdictional foundation of the injury claim made in the district court; and since the district court pleadings alleged an accidental injury, a variance from the timely filed claim for occupational disease existed that defeats the jurisdiction of the district court.

■ Select correctly cites that a claimant in a workmen's compensation case must plead and prove presentation of a claim before the Industrial Accident Board which has been acted upon by the Board, and that the claim asserted in the district court must be the same as that filed with

and acted upon by the Board. Unless all these conditions are met, the court does not have jurisdiction. Solomon v. Massachusetts Bonding and Insurance Co., 347 S. W.2d 17 (Tex.Civ.App.—San Antonio 1961, writ ref'd). On appeal to the district court, there must exist, at least in general, an identity of the injury or condition presented to the Board with that of the injury or condition presented by the claimant's pleadings. Johnson v. American Gen. Ins. Co., 464 S.W.2d 83 (Tex.1971).

Relying on the pronouncement in *Solomon*, supra, that:

". . . An industrial accident or accidental injury can always be traced to a definite time, place and cause, whereas an industrial disease is of slow and gradual development, and the time, place and cause thereof are not susceptible of definite ascertainment,"

Select denies the existence of the requisite identity of claims in the case at bar. This is so, Select reasons, because the first notice of claim did not sufficiently relate Mrs. Patton's condition to a specific time or event, but rather described a condition which arose over an extended period of time. From this point, Select reasons further that the amended notice of claim cannot form the basis of Mrs. Patton's pleadings in district court because it was filed later than six months from the date of injury without good cause being shown for the late filing.

The case of Western Casualty Co. v. DeLeon, 148 S.W.2d 446 (Tex.Civ.App.—Fort Worth 1941, writ dism'd), held that if a claim is filed in due season, it does not matter how the injury may be described, and it may be amended at any time before the Board has finally disposed of the claim. Select acknowledges the existence of this rule, but responds that the original claim, to support an amended claim for injury, must first describe an "injury," the description of which was absent from the first notice of claim in the present case.

In determining the character of the claim, guidance is given by the now well-settled rule as to the requirements of claim notices expressed in Johnson v. American Gen. Ins. Co., supra, thusly:

"(T)he function of the claim filed by the workman is to give information as to what happened and to serve as a proper basis for investigation, hearing and the determination of the claim. It is not intended that the claim filed be governed by any strict rules or formalities. It is not required of claimants that they know correct legal classification, the medical name of the disabling condition, or proper diagnosis of the injury or disease which causes their incapacity."

Here, the first notice of claim was filed by the claimant herself. The form furnished to report an injury was utilized. The notice gave a definite place of occurrence, a definite, albeit inaccurate, date of the occurrence, and a localized area of abnormality for which compensation was claimed. While the notice did not specify the particular event of injury stated in the amended claim, the omission thereof did not necessarily constitute notice only of an occupational disease arising over a long period of time. Select makes no contention that the first notice was insufficient to give it the necessary information about what happened or to serve as a proper basis for investigation, hearing and determination of Mrs. Patton's claim.

Under the liberal construction required to be given the Workmen's Compensation Act, the first notice of claim was legally sufficient to report an accidental injury. As a sufficient notice of injury, the first claim was subject to the amendment made, resulting in the proper identity of the claim heard before the Board and that pleaded in the district court. Accordingly, the first point of error is overruled.

Select addresses its points of error two through fourteen to the legal and factual insufficiency of the evidence to

support the jury's findings that Mrs. Patton suffered a total and permanent incapacity as a result of an accidental injury on July 29, 1970. In determining the "no evidence" assignments, we must consider the evidence favorable to the answer to the respective special issues and disregard all evidence which is adverse to the favorable findings. Renfro Drug v. Lewis, 149 Tex. 507, 235 S.W.2d 609 (1950). In determining the insufficient evidence assignments, we are required to consider and weigh all of the evidence, both supporting and contrary to the verdict, and to sustain the challenge if the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust, even though there is some evidence of probative force in support of the verdict. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951).

■ Special issue no. 1 with its accompanying definition [1] submitted the question whether, and the jury found that, Mrs. Patton received an injury on July 29, 1970. Mrs. Patton testified that on July 29, 1970, while turning the pages of the pricing catalogue, she felt "a severe pain in my side" after she "jerked the catalogue." For the remainder of that day she could not use her left arm in doing her work. Mrs. Anderson, who was present, testified that on July 29, 1970, while Mrs. Patton was performing her duties as pricing clerk, "she moved this page of catalogues with her left arm and she made a sound like 'Oh!'" Mrs. Anderson then asked what was wrong, to which Mrs. Patton replied, "I have pulled something." There is no direct testimony in the record disputive of the accounts given by Mrs. Patton and Mrs. Anderson. Testimony was adduced from medical experts that the probability was that Mrs. Patton suffered an injury on July 29, 1970.

On the other hand, Mrs. Patton first had pain in her left rib cage in 1966. Prior to July 29, 1970, the pain would come and go. In the last year of her employment, Mrs. Patton was absent eighteen days on sick leave, the last absence occurring some three months before her employment termination. By medical testimony it was shown that Mrs. Patton suffered from chondritis, the cause of which was unknown, since 1966, and that the type of activity performed by Mrs. Patton in her employment was not believed to initiate, although it could aggravate, chondritis.

There is no fixed rule of evidence by which one is required to establish the fact of an injury. Maryland Casualty Company v. Davis, 464 S.W.2d 433 (Tex.Civ.App.—Amarillo 1971, writ ref'd n. r. e.) Viewed as it must be, the evidence sufficiently supports the answer of the jury to special issue no. 1.

■ By its answer to special issue no 1B, the jury found that the injury received by Mrs. Patton was the result of an accident. For an injury to be "accidental" there must be sufficient proof of an undesigned, untoward event traceable to a definite time, place and cause. Olson v. Hartford Accident and Indemnity Co., 477 S.W.2d 859 (Tex.1972). The aforementioned testimony of Mrs. Patton and Mrs. Anderson specifies a definite time and place at which the injury occurred, and that such injury involved some sort of pulling. Dr. Jack Walker, one of the qualified medical expert witnesses, testified that in reasonable medical probability Mrs. Patton suffered a costrochondral sprain on July 29, 1970. A strain or exertion is an accidental injury within the meaning of the Texas workmen's compensation law. Travelers Insurance Co. v. Strech, 416 S.W.2d 591 (Tex.Civ.App.—Eastland 1967, writ ref'd n. r. e.); Mountain States Mu-

1. "1. Do you find from a preponderance of the evidence that plaintiff received an injury on July 29, 1970?
"'Injury' means damage or harm to the physical structure of the body and such dis-

eases or infection as naturally result therefrom, or the incitement, acceleration, or aggravation of any disease, infirmity, or condition, previously or subsequently existing, by such reason of such damage or harm."

tual Casualty Company v. Redd, 397 S.W. 2d 321 (Tex.Civ.App.—Amarillo 1965, writ ref'd n. r. e.). Accordingly, special issue no. 1B had adequate evidential support in the record.

Further, the jury found that the July 29 injury was a producing cause[2] of Mrs. Patton's incapacity. In this connection, the relevant expert medical testimony regarding Mrs. Patton's condition must be considered.

Dr. Lowell Bast was, at the time of trial, a practitioner of general surgery in Amarillo. He first saw Mrs. Patton on November 11, 1970, at which time he examined her and obtained from her a history of her problem. Dr. Bast found from his examination that Mrs. Patton was suffering from a prominence of the left costrochondral arch, her rib margins were more prominent on the left side than on the right, and there was tenderness over the rib cartilages on the left side. The costal cartilage is connecting tissue which forms a bridge between the ends of the ribs and the sternum. The cartilage allows the ribs to move and to expand with respiration. The muscle that is used to bring the arm across the chest is attached to the costal cartilage, and it was Dr. Bast's testimony that, were Mrs. Patton required to move her left arm away from and across her body, she would have employed this particular muscle.

Dr. Bast related the history given him by Mrs. Patton. She had been having some pains and tenderness around her costal margin for some time, but that during the latter part of the summer, she injured it severely and her pains increased sharply, following which she was unable to do her work adequately.

Dr. Bast then consulted with Dr. Kenneth Johnston and decided it advisable to hospitalize Mrs. Patton for the performance of a biopsy to ascertain the cause of the swelling in her rib area. When Mrs. Patton was hospitalized, the provisional diagnosis of her condition made by Dr. Bast was that she was suffering from costal chondritis, or an inflammation of the costal cartilage. The final diagnosis was "non-specific chondritis," which means that the specific etiology, or cause, of the condition was not apparent.

Dr. Bast then stated that in his opinion, based on reasonable medical probability, the injury of July 29, 1970, which Mrs. Patton related to him probably aggravated her chrondritis condition considerably, and to the end that she is probably incapacitated for nearly any kind of physical labor. It was his opinion that the cause of her incapacity is entirely due to her chondritis. The name by which he characterized the injury of July 29 was "costrochondral sprain," the common cause of which is a stretching or pulling in an awkward manner. Such an injury would, in Dr. Bast's opinion, aggravate the condition of chondritis which had existed in Mrs. Patton since 1969. Were it not for the chondritis condition and the aggravation of that condition suffered by Mrs. Patton, she would be in reasonably good health, and would have been able to continue her work.

Upon cross-examination Dr. Bast was referred to a letter signed by him and addressed to Mr. Bill Fomby of Straus-Frank. A portion of the letter stated:

"it is my feeling that her condition was caused most likely by the constant handling of catalogues which she did eight hours a day while employed by . . . at your firm."

Although he made no reference in the letter to any injury on July 29, Dr. Bast said that he was referring to the "condition of pain and all that has come on since her aggravation in July." He did not mean to

2. The court's charge contained the following definition of "producing cause":
   " 'PRODUCING CAUSE' means an injury or condition which, either independently or together with one or more other injuries or conditions, results in incapacity, and without which such incapacity would not have occurred when it did."

infer that the continual handling of catalogues was the producer of her chondritis, because he did not know the cause of the condition.

Dr. Jack Walker is a medical doctor engaged in a family practice in Amarillo. He first saw Mrs. Patton in March of 1972. When she first came to him, Mrs. Patton was complaining of chest pains, particularly on the left side of her chest, and had a good bit of tenderness in her chest wall. He did not obtain a history from her as to the incident and injury which caused her to quit her job. Dr. Walker's testimony was that a costrochondral sprain is merely a separation of the end of the rib from the cartilage. Such a sprain can be caused by a twisting motion if an underlying inflammation is present, or by a movement such as leaning back from the front seat of a car to pick up something. Sometimes even a severe cough can cause such a sprain.

In answer to a hypothetical question put to him by counsel for Mrs. Patton, Dr. Walker's opinion was that in reasonable medical probability Mrs. Patton suffered a costrochondral sprain on the occasion in question. The question was objected to by Select, and the objection is the subject of a later point of error which does not present reversible error. Nevertheless, the testimony was admitted on the condition that supportive evidence be offered by a subsequent witness. Dr. Walker further said that if Mrs. Patton did indeed suffer such a sprain, it would have aggravated her pre-existing condition of chondritis.

Through cross-examination, Dr. Walker testified that the determination of whether in fact a separation of the end of the rib from the cartilage had occurred is by a specific point of tenderness. When he examined Mrs. Patton he found no such point of tenderness, but rather he found a condition of diffused tenderness over the whole area of the cartilage. He did state, however, that such sprains do heal back. He was asked if, assuming that Mrs. Pat-

ton's job involved constant exertion for a long period of time, such activity could produce chondritis, to which he answered that it could. He also testified that the results of chondritis, such as the condition of Mrs. Patton, *could possibly* have been produced over a long period of time by continual exertion.

■ Aside from the actual cause of the chondritis, the focus is on its effects, if any, as a producing cause of Mrs. Patton's incapacity. "Producing cause," as properly defined for the jury, merely contemplates an injury, independently or *together with one or more injuries or conditions,* which results in incapacity, and without which such incapacity would not have occurred when it did. The evidence is of sufficient probative force to support the jury's determination that the July 29 injury was a producing cause of Mrs. Patton's incapacity.

The answers given by the jury to special issues nos. 2A, 2B and 2C established that Mrs. Patton suffered total and permanent incapacity commencing from July 29, 1970. It was the testimony of Mrs. Patton that she has been unable to hold any gainful employment since her injury, and that she has not been able to keep house in the manner she did previously. She cannot sit up all day without pain; she has to lie down two or three times daily. The testimony of Mary Grace Parkinson, Mrs. Patton's aunt who was familiar with her activities, was that Mrs. Patton has been unable to do such things as vacuum her house, and that she appeared to be in pain most of the time.

■ Dr. Bast testified that in his opinion Mrs. Patton could not do any work which required any real physical exertion, and that anything that involved the use of her left arm would be hard for her to do. Pain is present most of the time, and the pain is severe enough to prevent her from being active at all. He said further that none of the treatment given her has been helpful, an indication that her condition is progressive. He saw no reason to think

that her condition would get any better in the near future.

Dr. Walker's testimony is similar to that of Dr. Bast on the point. He testified that as far as he knew, there was nothing that could be done for her condition other than treatment of the symptoms, and that he did not think the condition would improve. He had no opinion on whether her condition was permanent, but again he knew of nothing else to do for her.

Highlighted by the above testimony, the record evidence adequately supports the jury's findings that Mrs. Patton's incapacity, commencing from July 29, 1970, was total and permanent.

All of the foregoing determinations upholding the jury findings answer Select's contention that there was no evidence or insufficient evidence to support the jury's finding that the incapacity was not caused solely by a pre-existing condition of Mrs. Patton's body, independent of and not aggravated by an injury on July 29, 1970.

The conclusions reached from the careful examination of the record dictated by the points of error are that the challenged jury findings are supported by some evidence, and that the findings are not so against the great weight and preponderance of the evidence as to be clearly wrong. Consequently, points of error two through fourteen are overruled.

Select complains, in its points fifteen and sixteen, of alleged error by the trial court in overruling Select's objections to certain portions of the testimony of Dr. Bast and Walker. The seventeenth point is directed to the overruling of Select's motion to strike the testimony of these two doctors.

■ The objection made to the testimony of Dr. Bast was that the history of Mrs. Patton's injury given by Dr. Bast was inadmissible hearsay. Select urges that it was hearsay because it related to the disputed question of whether there was an in-

jury and, if so, how it occurred. As stated in Walker v. Great Atlantic & Pacific Tea Co., 131 Tex. 57, 112 S.W.2d 170 (1938), such testimony is inadmissible when it relates to the disputed issue of how the injury occurred; however, it is generally held that statements as to past matters made by one injured to a physician, while not admissible as evidence of the facts stated, may be testified to by the physician to show the basis of his opinion. Moreover, statements of patients made to a physician for the purpose of making diagnosis are generally admissible as an exception to the hearsay rule. Texas Employers' Insurance Ass'n. v. Steadman, 415 S.W.2d 211 (Tex. Civ.App.—Amarillo 1967, 'writ ref'd n. r. e.).

■ Dr. Walker's testimony was objected to on the ground that the hypothetical situation proposed to him contained an element which was not supported by the competent evidence; to-wit, that Mrs. Patton had suffered an injury on July 29, 1970, and particularly that the injury involved a pulling and stretching of the chest muscles. The question and Dr. Walker's response to it were admitted by the trial court on the condition that subsequent testimony be offered to support the assumed facts. At the time Dr. Walker testified, Mrs. Patton had not yet been called as a witness, and it was in anticipation of her testimony that the court permitted counsel to present the hypothetical situation. Mrs. Patton's testimony did place in evidence the fact of injury and the additional fact of a "pulling or straining" of her muscles. Furthermore, at the time the hypothetical facts were proposed to Dr. Walker, Mrs. Anderson had testified to the fact that Mrs. Patton suffered a "pulling" in her left side on July 29, 1970. No error is perceived in receiving Dr. Walker's testimony.

Since there was no error in the admission of the testimony of either Dr. Bast or Dr. Walker, the overruling of Select's motion to strike their testimony was proper. Points fifteen through seventeen are overruled.

■ Points of error eighteen through twenty-three embrace the central complaint that the trial court erred in failing to submit requested issues and instructions which would apprise the jury of the difference between the concept of injury and that of occupational disease, and which would place before the jury the defensive theory of noncompensable disease. In essence, the complaint is that the court refused to enlarge the definition of "injury" given in connection with special issue no. 1, and to submit the requested issue, with an instruction, inquiring if Mrs. Patton's incapacity, if any, is the result of occupational disease. Admitting that the definition of "injury" given has been approved in many cases and that its propriety is recognized in 2 Texas Pattern Jury Charges 15, Select nevertheless argues, sans authority approving the issues and instructions contended for, that it was denied an adequate submission of its defense.

Under the joined issues, the burden devolved on Mrs. Patton to establish an accidental injury producing an incapacity, which incapacity was not caused solely by a pre-existing condition of her body independent of and not aggravated by the injury. Additional to the other issues submitted was special issue no. 7 inquiring:

> "Do you find from a preponderance of the evidence that any incapacity found by you was not caused solely by pre-existing condition of her body, independent of and not aggravated by an injury, if any, on July 29, 1970?"

This special issue submitted the very theory upon which Select relied as a defense. The jury's finding was adverse to Select's position.

■ The controlling issues were fairly submitted, and the failure to submit other and various phases or different shades of the same issue will not result in a reversal of the case. Rule 279, Texas Rules of Civil Procedure. The eighteenth through twenty-third points are overruled.

The jury finding that Mrs. Patton gave notice of her injury of July 29, 1970, to her employer within 30 days following the injury is attacked by Select through its twenty-fourth and twenty-fifth points. The sufficiency of the evidential support is challenged.

■ Mrs. Patton's direct testimony is that on August 3, 1970, she told Mr. Fomby, her supervisor, that she was quitting and that she had hurt herself on the previous Wednesday. Fomby said that he simply had no recollection one way or the other about whether Mrs. Patton told him on August 3 that she had suffered an injury. Fomby did, however, state that he was in contact with Select concerning Mrs. Patton's claim for compensation around August 26, 1970, and that he filed an "Employer's First Report of Injury" on August 24, 1970. This testimony constitutes some evidence of timely notice to the employer, and with a view toward the entire record, the finding is not so against the great weight and preponderance of the evidence as to be clearly wrong. Points twenty-four and twenty-five are overruled.

By points twenty-six and twenty-seven, Select complains of the action of the trial court in excluding defendant's exhibits nos. 9 and 10. Exhibit no. 9 was a letter dated August 27, 1970, from William Fomby to Charles G. Neal, the senior claim adjuster for Select, which accompanied defendant's exhibit no. 10, the "Employer's First Report of Injury" prepared by Fomby on August 24 and submitted to Select. Both instruments contained information of statements made by Mrs. Patton and by doctors, or Mrs. Patton's report of the doctors' statements.

These exhibits were offered after Fomby's cross examination testimony that, while he did not remember or recall what Mrs. Patton may have said to him about being hurt the week of July 29, he assisted Mrs. Patton with her workmen's compensation claim and corresponded with Mr. Neal and filed the employer's first report of injury less than thirty days after July 29.

The stated purpose of the exhibits was to demonstrate that Fomby did not correspond with Select with respect to a July 29 incident nor file a first report descriptive of an injury. The theory of admissibility was that the jury charged with passing upon the question of notice was entitled to see what the correspondence and the report were.

Although the tendered instruments were refused admission, the court permitted, and Select made, the showing by Fomby that the correspondence and the report made no reference either to the date of July 29, 1970, or to Mrs. Patton's assertion of an injury on that date. There was nothing in the instruments to indicate to Fomby, so he testified, that the date of July 29, 1970, had any significance to him.

■ Select now argues that the instruments were offered to show, rather than to prove the truth of, what was said therein and, as such, the tendered exhibits were admissible as verbal acts because what was said therein had significance on the issue of notice. The instruments were material, Select says, because the cross-examination of Fomby clearly inferred that Fomby reported an injury, and "(t)he tendered exhibits disclosed that he reported not an *injury* but a pre-existing condition, and thus they clearly rebutted the inference drawn by Mrs. Patton." Furthermore, Select contends, "(a)s a general rule, evidence will be deemed to be relevant and material if it tends to prove or disprove any fact in issue or if it is capable of affording any reasonable presumption or inference as to the principal matter in dispute. . . . Select's exhibits meet this test of relevancy because they bore directly on the issue of what it was that Mr. Fomby was reporting."

We consider the court's exclusion of the tendered exhibits to have been correct. The actual legal significance of the instruments is that they were communications that did not report an injury occurring to Mrs. Patton on July 29, 1970. Select's stated purpose in tendering the exhibits was achieved when it was allowed to, and did, solicit from Fomby the significance of the instruments through his testimony that he did not correspond with, nor make a report to, Select concerning any injury asserted by Mrs. Patton on July 29, 1970. The purpose was achieved without exposure of the multiple hearsay statements to the jury. And, although Select now contends that the instruments were not offered to prove what was said therein, analytically the thrust of Select's argument is that the instruments bore directly on the truth of the issue of notice of injury. And logically, the instruments become relevant on the notice-of-injury issue only by the assertive conclusion Fomby stated therein, based on the hearsay statements he quoted, that Mrs. Patton was not involved in an accident. As such, the instruments were sought to be used as an equivalence of an assertion; and, that being so, the instruments would have to be, and since the noted case of Wright v. Doe d. Tatham, 7A. & E. 384, 112 Eng.Rep. 515 (Exchequer Chamber 1838), have been, rejected as hearsay evidence concerning the matter at issue.

Furthermore, despite Select's contrary contention, the exclusion of the exhibits would amount at most to harmless error since the evidential purpose to be served by them was achieved by Fomby's testimony. Rule 434, T.R.C.P. Points twenty-six and twenty-seven are overruled.

■ The twenty-eighth point of error is addressed to the alleged error of the court in overruling Select's objection to special issue no. 6. The objection was that the issue failed to limit the inquiry about notice to the receipt of notice by William B. Fomby.

Special issue no. 6 and the answer thereto are as follows:

"Do you find from a preponderance of the evidence that Janice W. Patton gave

notice of her injury of July 29, 1970, to Straus-Frank Company, her employer, within thirty (30) days following receipt of the same?"

\* \* \* \* \* \*

"ANSWER: Yes."

The specific complaint concerning this special issue is that the jury may well have considered the claimed knowledge of Mrs. Anderson as notice to Straus-Frank Company. The resulting argument is not persuasive.

Of course, any notice given to Mrs. Anderson would not be imputed to the employer. However, all of the testimony concerning the notice given within the thirty-day period related to notice directed to Mr. Fomby, Mrs. Patton's supervisor. A reasonable probability that the jury was misled by the issue is not manifest. Therefore, point twenty-eight is overruled.

The twenty-ninth and thirtieth points are "no evidence" and "insufficient evidence" points directed to the jury's findings that Mrs. Patton incurred reasonable medical expenses in the amount of $331.50 which Select failed to pay. The only testimony on the reasonableness of these expenses was that of Dr. Walker. His testimony was that the charges were reasonable and necessary in the treatment of Mrs. Patton's condition. This evidence fully supports the jury's answer. The last two points are overruled.

By a cross-point, Mrs. Patton maintains that, under Rule 438, T.R.C.P., a 10% penalty should be assessed against Select for perfecting a frivolous appeal for purposes of delay. To justify the penalty, it must appear at the time the appeal was perfected that the appellant had no reasonable ground to believe that the judgment would be reversed. Harlan v. First State Bank of Sterling City, 285 S.W. 694 (Tex. Civ.App.—San Antonio 1926, no writ). An examination of the entire record, the consideration of Select's points of error, and the study of Select's comprehensive

brief negative the lack of such a reasonable ground of belief. Thus, despite the fact that Select's position was not sustained on appeal, the appeal was not frivolous. The cross-point is overruled.

The judgment of the trial court is affirmed.

ROBINSON, J., not sitting.