Roger A. BURLESON et ux., Appellants,

v.

R. D. FINLEY et al., Appellees.

No. 12856.

Court of Civil Appeals of Texas, Austin.

May 23, 1979.

Rehearing Denied June 20, 1979.

James L. Cutcher, Barkley & Cutcher, Taylor, for appellants.

H. Lee Godfrey, Graves, Dougherty, Hearon, Moody & Garwood, Austin, for appellees.

SHANNON, Justice.

This is an appeal from the judgment of the district court of Williamson County in a trespass to try title and assault case.

Appellants Roger A. and Mary D. Burleson, husband and wife, filed suit against appellees R. D. Finley, his wife Ruth Finley, and others to try title to a 1.02-acre tract located in Williamson County. In their trial answer, appellees R. D. and Ruth Finley asserted a cause of action in assault against Burleson. As a part of the relief sought, appellees applied for an order enjoining Burleson from interfering with their use and enjoyment of the land in question.

After trial to a jury, the district court entered judgment for appellees for possession of and title to the tract of land. The judgment also provided that R. D. and Ruth Finley recover $9,600.00 in actual and exemplary damages against Burleson. In addition, the judgment permanently enjoined Burleson from interfering with appellees' use and enjoyment of the land.

In 1937, the Burlesons bought a 580-acre ranch in Williamson County. The deed to Burleson described the east boundary of the part of the ranch here involved to be the center of Brushy Creek. In June of 1977, appellees held record title to a 192-acre parcel of land from the center of Brushy Creek to the east from the Burleson land.

The 1.02-acre tract in dispute lies east of Brushy Creek. The factual foundation for the Burlesons' claim to that tract is Roger Burleson's assertion that in 1939 or 1940 he orally agreed with appellees' predecessor-in-title, William I. Insall, that Insall would maintain a portion of the fence on Burleson's side of the creek and that Burleson would keep up a piece of fence on Insall's side, and that each would own the strip of land where his respective cattle would roam. Burleson later built a road on the tract and a dam across the creek.

In 1976, appellee Finley purchased, for the purpose of subdivision, part of what had been the Insall ranch. In September, 1976, Finley told Burleson that he intended to take down the fence on the east side of the creek that partially bounded the east side of the 1.02-acre strip. An argument resulted, and Burleson attempted to strike Finley. Some time thereafter, Finley began development of the subdivision.

On June 26, 1977, appellees Finley and another couple were driving about viewing the subdivision. They stopped their automobile near the fence of the 1.02-acre tract. Finley crossed the fence and removed some "no trespassing" signs which Burleson had placed within the tract. Burleson happened to be nearby and heard the racket occasioned by the removal of the signs. He took a pistol from his pickup and walked through the pasture toward the noise. Finley, in the meantime, had recrossed the fence and was standing by his automobile.

After an argument between Burleson and Finley, Burleson fired his pistol five times. Burleson testified that he was trying to scare Finley so that he would not return. Some of the slugs struck Finley's automobile, but no person was struck. Finley and the others fled in the automobile as hastily as possible.

The next day Burleson filed suit to establish title to the 1.02-acre tract and for injunctive relief restraining appellees from removing the fence bounding the subject tract of land.

The jury refused to answer affirmatively the first issue of a *Hooks v. Bridgewater,* 111 Tex. 122, 229 S.W. 1114 (1921) submission, that an agreement existed between Burleson and Insall to transfer ownership of the 1.02-acre tract to Burleson. The jury refused to find that Burleson had peaceable and adverse possession of the tract for ten years prior to June 27, 1977. The jury answered that the Finleys suffered $1,600.00 in damages as a result of the shooting. In addition, the jury answered that the shooting was malicious and that the Finleys should be awarded $8,000.00 as exemplary damages.

Appellants complain of the judgment by ten points of error. The most serious question in the appeal is raised by appellants' point of error one, "The Court erred in overruling Plaintiff's Motion for Mistrial when Defendants' attorney violated the Court's ruling and informed the jury on voir dire that Roger A. Burleson had killed Mr. Insall."

In 1953, Burleson shot and killed William I. Insall, the Finleys' predecessor-in-title, and the person with whom Burleson claimed to have made an oral agreement concerning ownership of the 1.02-acre tract. Burleson was tried and acquitted for the killing.

Prior to trial counsel for appellants filed a "motion in limine" requesting the court to instruct counsel and appellees' witnesses not to refer to the fact that Roger A.

Burleson ". . . was at one time tried for the offense of murder in the District Court of Williamson County." No order granting the motion appears in the transcript; however, the word "sustained" appears written in the margin opposite each ground asserted in the motion. Although the word "sustained" is not initialed or signed by the district court, the parties have treated the notation as an order by the court sustaining the motion in limine.

During jury *voir dire* counsel for appellees stated to the panel, "Mr. Insall is the man Mr. Burleson said he had this oral agreement with back in 1939. Mr. Insall is dead. Mr. Burleson killed him." [1] Counsel for appellants began an objection to the statement. At that time the court admonished the jury that they should not consider the statement for any purpose. Later, outside the presence of the jury, counsel was permitted to state fully his objection and move for a mistrial. The court overruled the motion for mistrial.

During trial of the cause R. D. and Ruth Finley were permitted to testify that they were aware that Burleson had killed a neighbor. The court instructed the jury to consider the testimony only as bearing upon the Finleys' state of mind and not as tending to show that Burleson had ever inflicted harm upon another person.

■ In general, broad latitude should be allowed on *voir dire* to enable counsel to intelligently exercise his peremptory challenges. *Fort Worth & D. C. Ry. Co. v. Kiel,* 195 S.W.2d 405 (Tex.Civ.App.1946, writ ref'd n. r. e.). We have concluded that counsel's statement on *voir dire* examination was not improper, and, as a result, the court did not err in refusing to declare a mistrial.

■ In a suit for assault, proof of prior assaults committed by the defendant is not admissible to show that the defendant committed the assault in question. Nevertheless, if exemplary damages are sought for

---

1. Counsel's statement was not technically a violation of the court's order in limine. The ultimate question raised by the point is wheth-

er the statement made by counsel referred to evidence that would be admissible during the course of the trial.

the assault, evidence of prior assaults is admissible on the issue of exemplary damages. *Jacques v. Ellis,* 219 S.W.2d 104 (Tex. Civ.App.1949, no writ).

■ Furthermore, as a part of their claim for damages for the assault, appellees pleaded, in effect, that as a result of the attack they had suffered fright, emotional disturbance, and mental anguish, and that they would continue in the future to so suffer. Appellees were aware that Burleson had killed a neighbor at the time he shot at appellees, and appellees were prepared to testify, and did testify, to that knowledge and its effect on their state of mind.

Evidence that appellees knew that Burleson had killed Insall was relevant and material (1) to show appellees' state of mind in connection with their claim for compensatory damages for fright, emotional disturbance, and mental anguish and (2) to the issue of exemplary damages. Accordingly, the district court did not err in refusing to grant appellants' motion for mistrial.

Points three, four, and five complain of the district court's refusal to strike the intervention of Dick M. and Fern D. Mayfield, appellees' immediate predecessors-in-title. The claimed error is grounded upon the alleged fact that appellees agreed with intervenors, that provided intervenors paid one-half of the attorney's fees intervenors would be relieved of any liability on their covenant of general warranty irrespective of the outcome of the suit.

■ Any party may intervene in a suit, subject to being stricken by the court for sufficient cause on motion of the opposite party. Tex.R.Civ.P. 60. When a party is sued for lands, the warrantor may make himself a party defendant in the suit and shall be entitled to assert such defenses as if he had been the original defendant. Tex. R.Civ.P. 786. The question whether the Mayfield's intervention, as warrantors, should have been stricken constituted a matter addressed to the discretion of the district court. 1 McDonald, *Texas Civil Practice* § 3.47 (1965 Rev. Vol.). Regardless

of whatever agreement existed between intervenors and appellees, regarding their liability *inter se,* the intervenors still remained potentially liable to remote grantees under their covenant of general warranty. *Alvord v. Waggoner,* 82 Tex. 615, 32 S.W. 872 (1895). The district court then acted within its discretion in refusing to strike the intervention. The points are overruled.

By point of error six appellants claim that the district court erred in overruling their motion to sever their cause of action in trespass to try title from the cross-action for damages for assault.

In their motion for severance appellants alleged that if the causes were not severed, their cause in trespass to try title would be prejudiced by proof of the shooting incident. Appellants averred further that the two causes of action were not dependent upon each other and that separate evidence would be necessary to prove each of the causes of action. Appellants, by the motion, did not move to sever appellees' application for injunctive relief.

■ Texas R.Civ.P. 41 provides that, "[a]ny claim against a party may be severed and proceeded with separately." A severance is appropriate if a controversy involves two or more separate and distinct causes of action, each of which might constitute a complete lawsuit within itself. Hall, *Severance and Separate Trial in Texas,* 36 Texas L.Rev. 339 (1958). An examination of the transcript shows that the suit involved two or more separate and distinct causes of action and was therefore subject to severance.

■ An order of severance or refusing severance will not be disturbed on appeal except for abuse of discretion. *Womack v. Berry,* 156 Tex. 44, 291 S.W.2d 677 (1956); *Hamilton v. Hamilton,* 154 Tex. 511, 280 S.W.2d 588 (1955). Had the district court severed the trespass to try title suit from the suit for assault, nevertheless, evidence of the shooting episode would have been admissible in the trespass to try title suit. This is so since appellees had applied for injunctive relief to restrain Burleson from trespassing on the land in question. To

prove their right to injunctive relief, appellees would have been entitled to prove the shooting incident. There was no abuse of discretion in the denial of the motion for severance. Point six is overruled.

■ By point of error eight appellants claim that the court erred in excluding the testimony of Michael Burns to the effect that appellee Finley had threatened him with a shotgun and had run over him with an automobile.

During cross-examination counsel interrogated Finley concerning the presence of a shotgun in his vehicle. In response to questions, Finley denied that he had ever drawn the shotgun on anyone. On re-cross examination appellants' counsel asked Finley if he had "pulled" a shotgun on Michael Burns in January of 1977. Finley answered, "I did. I'm sorry. I forgot the incident." Counsel interrogated Finley further about the incident with Michael Burns, and Finley consistently replied that he had drawn the shotgun on Burns and that he had forgotten about it until counsel had questioned him about the specific incident. Finley denied that he tried to run over Burns.

Burns testified on bill of exception that Finley drew the shotgun on him and that Finley ran over him with his car. These transactions arose from a quarrel between Finley and Burns concerning a check allegedly stolen by Burns. Burns admitted that just prior to the shotgun incident, he had intentionally attempted to provoke a fist fight with Finley by making infamous remarks about Finley's daughter. After Finley drew the shotgun, he speeded away in his car and Burns was allegedly struck by the side view mirror of the car.

The district court did not err in excluding Burn's testimony. The quarrel between Burns and Finley was collateral and immaterial to any issue to be determined in the trial and therefore was inadmissible. 1 McCormick and Ray, *Texas Law of Evidence* §§ 683, 684 (1956).

Point of error seven is "[t]he Court erred in admitting into evidence the statement of R. D. Finley as to what he had been told by certain hunters about Roger A. Burleson." Finley had leased his land for deer hunting. Finley testified without objection that his deer hunters related to him that while they were hunting on Finley's land Burleson appeared carrying a gun and told them to stay away from the fence. Appellants insist that Finley's statement is hearsay.

■ Communications made or received by a person will often be relevant, not as evidencing that the facts are as stated in the communication, but instead as tending to show the knowledge or belief of the person who communicated or received the statement. 1 McCormick and Ray, *Texas Law of Evidence* § 799 (1956). The hunters' communication was not admissible for the truth of the facts stated therein but it was admissible and probative as tending to show its effect upon Finley's state of mind. The evidence was relevant and material to Finley's claim for damages for fright, emotional disturbance, and mental anguish.

Point of error two is that the district court ". . . erred in admitting the Affidavit of Clinton P. Rippy into evidence." Appellees called Rippy, a surveyor who had surveyed Burleson's land in 1973. On direct examination, counsel asked Rippy whether Burleson had told him that his property line was the center of Brushy Creek. Rippy answered, "I'm going to try to answer that, and I don't think I can answer it 'yes' or 'no' as such. But I can answer it in this fashion, if I may." Rippy then testified that he had discussed the matter with Burleson and had told Burleson that the field notes went to the center of the creek, and that ". . . at that time, it was understood between he and I [*sic*] that we were supposed to survey up the center line of Brushy Creek, and not to go to the fence on the other side."

The court, over objection of appellants' counsel, permitted Rippy to read an affidavit signed by him in June, 1977. The affidavit states, in part, "At the time I surveyed the property of Mr. Burleson, I was told by him that his property line ran to the center of the channel of Brushy Creek and

not to the fence which was located on the property of Dick M. Mayfield and wife, Fern D. Mayfield."

Appellees defend the admission of the affidavit upon the basis that they were entitled to impeach their witness Rippy because he had ". . . attempted to qualify or contradict his earlier sworn statement [the affidavit]. . . ."

Where a party is surprised by the testimony of his own witness, the party is entitled to impeach the witness by showing statements made by the witness at another time that are contradictory to his testimony given at trial. The testimony sought to be discredited must be such as disproves, in some degree, the case of the party by whom the witness is called. "It is not enough that the witness simply disappoints the expectations of such party, by failing to give testimony as beneficial as was expected." *Morgan v. Stringer,* 120 Tex. 220, 36 S.W.2d 468 (1931).

The only "surprise" shown by Rippy's testimony was counsel's statement that he was surprised. Although surely disappointing to appellees, Rippy's testimony did not disprove, in any degree, appellees' case. *Morgan v. Stringer, supra.*

Appellants' objection to the admission of the affidavit was, "Your Honor, this is nothing more than a self-serving affidavit. I think if the Court will look at it, that the Court will come to that conclusion. . . Our same objection, Your Honor, that the witness is here and he's able to do his own testifying, and this is nothing more than a self-serving affidavit prepared by somebody at that time."

A valid objection to the offer of evidence is one that names a particular rule of evidence that will be violated by the admission of the evidence. *De Garca v. Galvan,* 55 Tex. 53 (1881); *Walker v. Great Atlantic & Pacific Tea Co.,* 131 Tex. 57, 112 S.W.2d 170 (1938); *University of Texas Sys-*

*tem v. Haywood,* 546 S.W.2d 147 (Tex.Civ. App.1977, no writ). The purpose of requiring a specific objection is, of course, to enable the trial court to understand the precise question and to make an intelligent ruling and to afford the offering party an opportunity to remedy the defect if possible. 1 McCormick and Ray, *Texas Law of Evidence* § 24 (1956).

An examination of appellants' objections to the offer of the evidence shows that counsel did not specify a particular rule of evidence that would be violated by the admission of the affidavit. As a result, the trial court never had the opportunity to understand the precise objection to the offer. By objecting generally, appellants waived the complaint that appellees' offer of the affidavit was an effort to impeach their own witness without showing surprise and without showing that the witness' testimony disproved, in some degree, appellees' case.

Point of error nine is that the court erred in admitting into evidence a "Xerox" copy of an executory contract of sale of a part of the 1.02-acre tract. Appellants asserted by objection that the admission into evidence of the copy was a violation of the best evidence rule and was hearsay.

Assuming the court erred in admitting the "Xerox" copy of the executory contract of sale, appellants have not shown that the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Tex.R. Civ.P. 434.

The judgment is affirmed.

Affirmed.