Simon T. GARZA, Appellant,

v.

Dan BERLANGA et al., Appellees.

No. 6870.

Court of Civil Appeals of Texas, El Paso.

April 16, 1980.

Rehearing Denied May 7, 1980.

Clemens, Spencer, Welmaker & Finck, George H. Spencer, San Antonio, for appellant.

Southers & Lyons, Inc., Stephen Dittlinger, Clem Lyons, San Antonio, for appellees.

## OPINION

WARD, Justice.

This is a medical malpractice suit involving an operation where the patient died. The surgeon and the anesthesiologist involved were found on jury trial to be negligent. The trial Court rendered judgment on the jury verdict for the Plaintiffs and against the two Defendants, jointly and severally. A settlement was made concerning the case against the surgeon, and the appeal of the anesthesiologist is before us. Primarily, errors concerning the introduction of evidence are urged. We affirm.

Mrs. Linda Berlanga underwent elective gallbladder surgery with Dr. E. A. Gonzales performing the operation and Dr. S. T. Garza as the anesthesiologist. She was thirty-

two years old and otherwise in good health. During the surgery when the gallbladder was being physically removed, it was determined that it had an abnormally short cystic duct and that an unusually high percentage of the gallbladder was imbedded in the liver. During the process, the surgeon removed a small wedge of the common bile duct, attempted to repair the duct, a stab wound was made and the inferior portion of the raw liver edge began bleeding. The surgeon attempted to control this bleeding by applying packs and pressure to the vena cava, the large vein. Dr. Garza noticed the bleeding, ordered extra units of blood and requested that a EKG monitor be brought in. He began transfusing blood to the patient, and later noticed a radical drop in her blood pressure until it ceased to register at all. A third doctor, who was assisting, began massaging the patient's heart and restored its function. During this crisis, the patient suffered a cardiac collapse, and went into a coma from which she never awoke. She died some two weeks later. The jury found that the surgeon was negligent in applying pressure to the vena cava, and in failing to timely recognize the deceased's cardiac arrest, both being the proximate cause of the deceased's death. They also found that the anesthesiologist Appellant was also negligent in failing to timely recognize the deceased's cardiac arrest and that likewise was a proximate cause of her death. Damages in excess of $160,000.00 were awarded by the jury to the children of Mrs. Berlanga, and judgment was entered upon the jury verdict for those Plaintiffs.

The Appellant first complains that the Court erred in allowing the Appellees' expert witness to testify that Dr. Garza's failure to timely recognize the cardiac arrest was a "proximate cause" of the patient's death. On the direct examination by the Appellees of their one expert, Dr. Mazzia, the following exchange took place.

Q Now, doctor, concerning the delay of Dr. Garza in diagnosing the arrest, do you have an opinion based upon a reasonable degree of medical probability as to whether or not such delay by Dr. Garza in recognizing Linda Berlanga's impending collapse or the arrest during surgery was a proximate cause of her death?

A Yes. I have an opinion.

MR. SPENCER: Pardon me.

Q And what is that opinion?

MR. SPENCER: I object because that's an ultimate legal conclusion.

THE COURT: Overruled.

A My opinion is that the delay in the diagnosing of the cardiac arrest was an ultimate proximate cause of Linda Berlanga's death.

Appellant relies on *Snow v. Bond*, 438 S.W.2d 549 (Tex.1969), to support his argument that an expert witness in a medical malpractice suit may not directly testify as to the ultimate question in issue. That case established restrictions on expert testimony when it stated that an expert was not competent to express an opinion as to what constitutes "malpractice" or "negligence" or "what a reasonable and prudent doctor would have done under the same or similar circumstances."

Here, we are not concerned with negligence but with an improper question and conclusion regarding proximate cause. In this area, it has been stated that considerable latitude has been allowed the expert who offers testimony concerning that subject. This distinction was noted in *Lee v. Andrews*, 545 S.W.2d 238 at 244 (Tex.Civ. App.—Amarillo 1976, writ dism'd by agreement).

In this case, the question and answer insofar as it related to causation in fact was not error. *Lenger v. Physician's General Hospital, Inc.*, 455 S.W.2d 703 (Tex.1970). See Perdue, *The Law of Texas Medical Malpractice*, 11 Hous.L.Rev. 302 at 616 (1974). However, we feel that it was improper to use the words proximate cause together as they imply the legal definition with its objective standards of the reasonable man and foreseeability. Having made this ruling, we must examine the record as a whole to determine the harm. Dr. Mazzia testified without objection that the act of

the surgeon who applied the pressure to the vena cava was a proximate cause of the cardiac arrest and the patient's death. In this connection, the Appellant Garza agreed that the cardiac collapse occurred because of the pressure to the vena cava and the cutting off of the blood, and that the initial coma was caused by this act. He then denied that the death could have been caused by the original brain damage; yet, he gave no valid opinion as to any other cause.

■ In regard to Garza's culpability, Dr. Mazzia testified without objection that the delay in recognizing the cardiac arrest was the cause of the brain damage. It was then established that during the surgery, Garza had not kept his finger on the carotid artery. Testimony was then offered that if he had, the cardiac arrest would have been diagnosed the second it occurred, and corrective measures could have been taken which would have resulted in a return of cardiac function and no brain damage. Admittedly, it was the Appellant's duty to have recognized the cardiac arrest. It was about this time that the objectionable question was asked and the answer given. In view of the above, and the very long record, it is our opinion that there would have been no different result had the objectionable wording been omitted. We hold this asserted error was harmless. Rule 434, Tex.R. Civ.P. The first point is overruled.

■ The next two points are "no evidence" and "insufficient evidence" points regarding the proximate cause findings, and are primarily based on the supposition that Dr. Mazzia's testimony was inadmissible. As pointed out, the complained of error regarding that testimony was a very small part of the lengthy testimony. Ignoring that portion objected to, but considering the balance of the evidence and the inferences therefrom which support the jury's finding, we overrule the legal insufficiency point. After reviewing all the evidence, the factual insufficiency point is likewise overruled.

■ The fourth point is to the effect that the Court incorrectly overruled Appellant's objection to the hypothetical question propounded to Dr. Mazzia regarding his opinion on standard medical practices concerning timely recognition of cardiac arrest. The question takes up four pages in the statement of facts and at one point in describing the surgeon's action, Appellant's name was used. A reading of the question shows clearly that the name was inadvertently used instead of the surgeon's name. A general objection to the question was made by the Appellant. It failed to disclose the defect and no error is presented. *Walker v. Great Atlantic & Pacific Tea Company*, 131 Tex. 57, 112 S.W.2d 170 (1938); *Wheatheart Feeders, Inc. v. Pletcher*, 453 S.W.2d 902 (Tex.Civ.App.—Amarillo 1970, writ dism'd).

■ Legal and evidentiary sufficiency points are next presented as to the negligence finding faulting the Appellant. In reviewing the legal sufficiency point, we have considered only the evidence and inferences therefrom which support the jury findings. In reviewing the factual sufficiency points, we have considered all the evidence. Both points are overruled.

The Appellant's last two points are that the trial Court erred in overruling objections to the opinion testimony of Dr. Benz regarding pecuniary losses suffered by Mrs. Berlanga's three minor children as a result of her death, it being claimed that the factors on which he based his opinion were not supported by the evidence and included elements not legally recoverable as damages. The suit was filed for the benefits of Mrs. Berlanga's three minor children. Special issue 14 inquired of the jury of the pecuniary losses suffered by the children, and the jury was instructed that they could consider the care, maintenance, support, services, education, advice and contributions of a pecuniary value that the children would in reasonable probability have received from their mother had she lived. The jury awarded Cindy, who at the time of trial was 14 years old, the sum of $30,480.00; Manuel, then age 9, the sum of

$53,340.00; and Lisa, then age 2, the sum of $76,200.00.

Dr. Benz, an expert in the field of economics, testified as to the value of the services which Linda Berlanga would have performed for the three children, had she lived up until the time they were 22 years of age. He then gave values for services in the areas of moral guidance and housework. The values given were based on the life expectancy of the deceased and the dependency of the minor plaintiffs until they reached 22 years of age. As a comparable for loss of household services, he considered the services of a housemaid paid the minimum wage rate, projected the wages until the youngest child would reach the age of 22, added an anticipated inflation factor, figured in a discount factor, and arrived at a conclusion that the sum of $134,112.00 would be the total pecuniary loss for those types of services. In arriving at the economic value for the loss of moral guidance, he equated the loss as being equal to the annual salary of a school teacher and, figuring in the same factors, arrived at the total sum in this area of $159,208.00. In obtaining a figure as to how to divide these amounts among the three children, he gave his opinion as to certain percentage figures based on their ages with the youngest child receiving the most and the oldest the least.

On three occasions, objections were made by the Appellant that "no proper predicate has been laid," that elements were included "that had not been proved," and "elements and amounts not shown to be reasonable and necessary as to parties seeking recovery in this suit." We hold these objections to be general because of the manner in which they were made and at the time that they were urged. They present no error.

Even if we were to consider the points, they would be overruled.

Appellant's main complaint is that one assumption made by the economist was absurd; that is, that the value of the moral guidance given by the mother to her children could not be compared to the salary of a school teacher. We consider that as going to the weight of the testimony and being a matter which was fully developed by the Appellant on his cross-examination. The other complaint made by the Appellant was that the economist added a ten percent fringe benefit figure into the monetary value of the maid when comparing to the housewife. This, too, was thoroughly explained by the Appellant on cross-examination and was obviously not considered by the jury. The jury discounted the economist's monetary figures by almost fifty percent. We find no error in the complaints made.

The judgment of the trial court is affirmed.